WINFIELD S. HAYMAN, APPELLANT, V. ELIZABETH C. ROWND ET AL., APPELLEES.

FILED NOVEMBER 6, 1908. No. 15,342.

1. **Injunction: WASTE.** A court of equity will restrain the committing of waste threatened by a tenant for years, and his agents or employees.

2. **Waste** is a destruction or material alteration or deterioration of the freehold, or of the improvements forming a material part thereof, by any person rightfully in possession, but who has not the fee title or the full estate.

3. **Waste.** A tenant is guilty of waste who drills holes into a brick wall, and drives wooden pegs therein for the purpose of attaching a sign, where such use would cause the brick in that part of the wall to become loose or misplaced.

APPEAL from the district court for Hall county: JAMES R. HANNA, JUDGE. *Reversed with directions.*

*Charles G. Ryan,* for appellant.

*Harrison & Prince, W. H. Thompson* and *Bayard H. Paine, contra.*

EPPERSON, C.

Plaintiff is the owner of what is known as the "St. James Hotel Building" in the city of Grand Island. The defendants were in possession of the building under a five-year lease, terminating in November, 1907, and the defendant, Mrs. Hanrahan, had charge of the dining room and cafe, under a contract with the Rownds. In September, 1906, the Grand Island Electric Company, through arrangements made with its codefendants, was about to

attach an electric sign to the side of the building above the door of the dining room and extending out over the sidewalk. This sign was 7 feet long, 18 inches wide, and weighed 73 pounds. Plaintiff, as owner of said premises, had forbidden defendants to attach the sign to said building, and, upon their attempting to do so, instituted this action for injunction, alleging that defendants were threatening to cut into said front wall of said building, tear down and deface and damage the same, to cut out the bricks, and permanently injure said wall and building, destroy its symmetry, and impair its strength and durability, thereby committing waste. Upon the trial the lower court dissolved a temporary restraining order previously issued, and dismissed the action.

It is the defendants' contention, and their case was tried upon the theory that the sign was to be attached to a pipe inserted into the wooden lintel above the door, that guy wires were to be attached to the lintel and to the frames of windows in the upper story without injury to the brick wall. We think there can be no doubt but that a preponderance of the evidence supports the plaintiff's contention. The sign was ordered or prepared by one of the defendants in such a way that with projecting stay rods it could be attached to the wall of the building, and screw holes were arranged that to so attach it it would be necessary to drill holes into the brick wall and insert wooden plugs therein. The evidence is undisputed that the manager of the electric light company stated to the plaintiff one week or ten days before the trial that defendants intended to attach the sign by drilling holes into the brick wall, not only for the stay rods, but also for the guy wires. But the manager testified that they intended to insert a rod or pipe into a hole bored into the wooden lintel above the door, extend this rod nine feet out over the sidewalk, and upon this they would hang the sign; that two guy wires attached to the outer end of the sign would be fastened to the wooden lintel, and two others to the window frames above. Although the witnesses testi-

fied that this was the intention of the defendant at the time they attempted to attach the sign, yet early in the trial he did not know whether the lintel was of wood, brick or iron. Nor does it appear that he made any effort to ascertain the material of the lintel until requested to do so during the trial. The stay rods could not be used if the sign was attached in the manner contended for by defendants. The whole case is strongly suggestive that defendants' intention not to penetrate the brick wall was not formed until the injunction suit was instituted. In view of this testimony we are convinced that the plaintiff successfully carried the burden of proving that the defendants intended and threatened to attach the sign by the drilling of holes into the brick wall, and inserting wooden plugs therein. From other testimony, it appears that this brick wall would have been damaged by the threatened acts of the defendants. The evidence shows that the wall was out of plumb; that the mortar was crumbling away; and that it was not as durable as brick walls built with the use of cement in the mortar, which was lacking here; and that in other places, where holes had been previously drilled and filled with wooden plugs, the brick in the immediate vicinity had become loosened and the wall damaged thereby. Many masons testified in behalf of the plaintiff that the threatened use of the wall would be of considerable damage thereto; that although the damage might not show at once, it was reasonably certain to appear later. It is true one witness testified in behalf of the defendants that the attachment of the sign by the drilling of the holes and the use of wooden plugs would not damage the wall. But, as it was the defendants' theory that such use was not threatened, it is apparent, in the absence of special findings, that the district court decided the case upon the defendant's theory, which, as above stated, is clearly defeated by a preponderance of the evidence.

Under the facts proved, we think there can be no doubt but that the defendants were threatening a waste of the

plaintiff's property, which the court may restrain. In 4 Pomeroy, Equity Jurisprudence (3d ed.), sec. 1348, we find the following: "Waste is the destruction or improper deterioration or material alteration of things forming an essential part of the inheritance, done or suffered by a person rightfully in possession by virtue of a temporary or partial estate as, for example, a tenant for life or for years. The rightful possession of the wrongdoer is essential, and constitutes a material distinction between waste and trespass. The remedy by injunction is fully established, and has not only virtually superseded the old common law 'action of waste,' but has to a great extent taken the place of the 'action on the case' for damages. An injunction will be granted in all cases where a legal action would lie to recover possession of the land wasted, or to recover damages. It will also be granted in many instances where no legal action can be maintained, although the interest of the injured party is legal; and where the estate of the injured party is wholly equitable; and where the waste itself is entirely 'equitable'; that is, where by the terms of the will, deed, settlement, or lease, the tenant holds the land 'without impeachment of waste.' An injunction will also be granted to restrain threatened waste, although none has actually been committed." In 8 Words & Phrases, 7406, 7407, we find the following definitions: " 'Waste' is defined to be any unlawful act or omission of duty on the part of the tenant which results in permanent injury to the inheritance. *Whitney v. Huntington,* 34 Minn. 458, 57 Am. Rep. 68 (citing Whart. Law Dict.; Abb. Law Dict.; Bouv. Law Dict.)" "Waste is an improper destruction or material alteration or deterioration of the freehold, or of things forming an essential part of it, done or suffered by a person rightfully in possession as tenant, or having but a partial estate, like a mortgagor." *Hamilton v. Austin,* 36 Hun (N. Y.), 138,

We recommend that the judgment of the district court be reversed and this cause remanded, with directions to enter a restraining order as prayed.

DUFFIE and GOOD, CC., concur.

By the Court: For reasons given in the above opinion, the judgment of the district court is reversed and this cause remanded, with instructions to the lower court to enter a restraining order as prayed.

REVERSED.