(153 App. Div. 401.)

## GRADY v. NATIONAL CONDUIT & CABLE CO.

(Supreme Court, Appellate Division, Second Department. November 27, 1912.)

1. MASTER AND SERVANT (§ 216*)—INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANTS—ASSUMPTION OF RISK.

At common law the placing by coemployés installing a sprinkler system of a plank from a beam to a window sill about 27 feet above the floor with one end 6 inches higher than the other, to be stood on while working, would be a detail of the work, and one working on it with full

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

knowledge of the situation and its dangers would be deemed to have assumed the risk of injuries therefrom.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 567–573; Dec. Dig. § 216.*]

2. MASTER AND SERVANT (§ 204*)—LABOR LAWS—ASSUMED RISKS.
    Where there is a violation of Labor Law (Consol. Laws 1909, c. 36) § 18, relating to unsafe scaffolds, hoists, stays, etc., the employer may not assert that an injured servant assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

3. MASTER AND SERVANT (§ 116*)—LABOR LAWS—"REPAIRING"—"REPAIR."
    One installing a sprinkling system is not engaged in "repairing" within Labor Law (Consol. Laws 1909, c. 31) § 18, relating to unsafe scaffolds, hoists, stays, etc., since "repair" is the restoration to a sound or good state after decay, waste, injury, or partial destruction, dilapidation, or loss, and involved the idea of something pre-existing.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*
    For other definitions, see Words and Phrases, vol. 7, pp. 6096–6102; vol. 8, p. 7785.]

4. MASTER AND SERVANT (§ 286*)—LABOR LAWS—"ALTERATION" OF BUILDING.
    It cannot be said as a matter of law that the installing of a sprinkling device is an "alteration" of a building within Labor Law (Consol. Laws 1909, c. 31) § 18, relating to unsafe scaffolds, hoists, stays, etc., since to be an alteration, the system must be in some manner installed so as to become an integral part thereof, and change its structural quality.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*
    For other definitions, see Words and Phrases, vol. 1, pp. 360–365.]

    Hirschberg, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by John Grady against the National Conduit & Cable Company. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Frank Verner Johnson, of New York City, for appellant.
Michael J. Tierney, of New Rochelle, for respondent.

BURR, J. On August 15, 1910, plaintiff, an employé of defendant, was injured while engaged in installing a sprinkler system in one of its buildings. The building was about 170 or 180 feet in length, and one story in height, with a cupola upon the top running the entire length thereof, upon either side of which were windows for purposes of ventilation. Within this cupola was a beam described as the "ridge pole" of the building. The distance from this ridge pole to the floor was above 27 or 28 feet. Plaintiff describes the size of this beam as 3 by 8 or 3 by 10. It was about 6 or 7 inches higher than the sills of the windows, and was distant 9 or 10 feet therefrom. The plan for the sprinkling system involved the erection of a main pipe or riser from the floor near the center of the building to a point near the roof of the cupola. Connected with this were lines of pipe running on either side of the ridge pole through the entire length of the

cupola, so designed that, in case of fire, the water in these pipes might be released for the purpose of its extinguishment. As described by one of the witnesses:

"There were sprinkler heads screwed in, and at 212 degrees of heat they would let go, and there was a pressure of water at all times on that pipe, and that amount of heat would make them let go and put the fire out."

There was some conflict of evidence as to the conditions which existed at the time of and immediately preceding the accident. The jury having found a verdict for plaintiff, for the purposes of this discussion we accept his version thereof. There was a ladder outside of the building. Ascending upon this, plaintiff climbed through the window and stepped upon a beam about 18 inches lower than the window sill, and walked across this to the center beam or ridge pole. On arriving at the place where he was to work, he found a plank extending from the center beam out to the window sill. As this beam was higher than the sill, to use his own words, "the board had a slant of 6 or 7 inches in that distance across." According to his testimony, this plank had been placed there by some of his fellow workmen, and he had no part in selecting the same or putting it in position. There is no evidence that the plank, which was 10 feet long, 10 inches wide and 1¼ or 1⅛ inches thick, was not sufficiently strong to bear plaintiff's weight. Plaintiff says that he noticed that the end of the plank projected 2 or 3 inches over the beam, and his contention is that it was not securely fastened at either end. It would seem that such must have been the case, for after plaintiff, standing upon it, had been engaged for 15 or 20 minutes in screwing two pieces of pipe together, one end of the plank slipped or was pushed from the beam upon which it had rested, and he was thrown to the ground and seriously injured. Plaintiff admits that he knew that "if it slipped, and I fell down, I would have an accident." There is no dispute that there was an abundance of material at hand and at the disposal of plaintiff and his coemployés with which to construct a proper staging or scaffold, had they been so disposed.

[1] At common law, upon this state of facts, plaintiff must have failed. Failure of plaintiff's coemployés, under the conditions here disclosed, to construct a safe scaffold, was a detail of the work, and for their negligence the master would not be liable; and plaintiff, having voluntarily undertaken to work upon the planking, with full knowledge of the situation and its dangers, would be deemed to have assumed the risk of injuries therefrom. Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367; McLaughlin v. Eidlitz, 50 App. Div. 518, 64 N. Y. Supp. 193; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860, 56 Am. St. Rep. 630; Harvey v. McConchie, 77 App. Div. 361, 79 N. Y. Supp. 241, affirmed 177 N. Y. 569, 69 N. E. 1124; Gombert v. McKay, 201 N. Y. 27, 94 N. E. 186.

[2] The learned trial court was asked to charge, and did charge, that:

"The size of the plank, its position on the beam and window sill, and the distance to the floor, and all the risks and dangers of working under such

conditions, were open, obvious, and apparent to the plaintiff, and all such risks and dangers were assumed by him, and he cannot recover damages for injuries resulting therefrom."

If this is the correct rule of law, to be consistent, the trial court should have granted the motion for a nonsuit. But in seeking to overcome this objection to the affirmance of the judgment plaintiff invokes the provisions of the Labor Law (Consolidated Laws, c. 31 [Laws of 1909, c. 36] § 18), to the effect that:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure, shall not furnish or erect, or cause to be furnished or erected for the performance of such work, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

He contends that the effect of this statute, so far as the measure of a master's duty is concerned, is to place upon him an absolute obligation, and one which cannot be delegated, not only to furnish, but to maintain, a safe, suitable, and proper scaffold for his servants to work upon. Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662; Madden v. Hughes, 104 App. Div. 101, 93 N. Y. Supp. 324, affirmed 185 N. Y. 466, 78 N. E. 167; Warren v. Post & McCord, 128 App. Div. 572, 112 N. Y. Supp. 960.

Since the argument of this appeal, and while the case was under consideration by this court, our attention has been called to the case of Fitzwater v. Warren, 99 N. E. 1042, decided by the Court of Appeals on October 22, 1912, as bearing upon the question of assumption of risk. In that case, where plaintiff was injured by an unguarded set screw in violation of the requirements of the statute, the rule is laid down by Chief Judge Cullen, writing for the majority of the court, that:

"Public policy precludes an employé from assuming the risk created by a violation of the statute or waiving liability of the master for injuries caused thereby."

Knisley v. Pratt, supra, would seem to be to the contrary, and the Chief Judge in his opinion concedes this to be so, but declares that the doctrine of that case no longer remains in full force and authority. In Gombert v. McKay, supra, in an opinion written by Collin, J., in which all of the judges, including the Chief Judge, concurred, and where the injury resulted from the use of a scaffold claimed to be constructed contrary to the provisions of the statute, it was said:

"Although it imposes upon the employers personal responsibility and a positive prohibition, it does not, in terms, impose absolute and irresistible liability from their default or disobedience; nor is the liability consequent upon the negligent violation of a duty created by a statute necessarily superior to the relevant common-law defenses thereto. * * * Under the statute in question, the employer is left free to invoke the defense of assumption of risk or contributory negligence on the part of the employé."

If these decisions may not be reconciled, we feel constrained to follow the later decision of the court, and to hold that if the evidence in this case discloses a violation of the statute, even although

the plaintiff knew of the existence of such violation, and the dangers resulting therefrom, the defendant is deprived of asserting by way of defense that he assumed this open and obvious risk.

[3, 4] It behooves us, therefore, to examine the evidence in this case in order to determine whether the provisions of the statute do apply; or, in other words, whether the work in which plaintiff was engaged was "the erection, repairing, altering or painting of a house, building or structure." The building in which plaintiff was at work at the time of his injury was not a new one. It had apparently been erected some time before, and the work of installing the sprinkler system seems to have been undertaken and carried on from time to time by defendant through its own employés when they were not engaged in the ordinary duties of their employment in connection with defendant's regular business. The work could hardly be said to be that of repair of the building within the accepted definitions of the word. "Repair" is "restoration to a sound or good state after decay, waste, injury, or partial destruction." Century Dict. title "Repair"; Webster's International Dict. Id.; Standard Dict. Id. Again, "repair" is "restoration after injury, dilapidation, or loss." Worcester's Dict. Id. It involves the idea of something pre-existing, the condition of which has been affected in one of the modes suggested. But this sprinkler system was a new construction, and was not in any sense a restoration of the building to a condition which at one time had existed, but which had been lost or impaired. Does the proof establish that the installation of this system was an alteration of the building itself, or was it merely the establishment of an appliance therein? In Madden v. Hughes, 104 App. Div. at page 103, 93 N. Y. Supp. 324, it was said that alteration involves substantial change in structure. In Wingert v. Krakauer, decided in 1902, 76 App. Div. 34, 78 N. Y. Supp. 664; s. c., 92 App. Div. 223, 87 N. Y. Supp. 261, it was said that alteration means "to change, modify, transform." But it was there held that placing machinery in a room and attaching it firmly to the ceiling constitutes an alteration therein within the meaning of the statute. In Schapp v. Bloomer, 181 N. Y. 125, 73 N. E. 563, a judgment in favor of plaintiff was reversed upon two grounds: First, that the staging upon which plaintiff stood was not a scaffold; and, second, that the use of such staging to facilitate the placing of fixtures was not a use for one of the cases specified in the statute, to wit, the erection, repair, alteration, or painting of a house, building, or structure. In Williams v. First Nat. Bank, 118 App. Div. 555, 102 N. Y. Supp. 1031; s. c., 121 App. Div. 929, 106 N. Y. Supp. 1150, affirmed 195 N. Y. 576, 89 N. E. 1115, referring to a scaffold used for putting up shafting, the court said this was "a use not covered by the language of the statute." In McKeage v. Hanover Fire Insurance Co., 81 N. Y. 38, 37 Am. Rep. 471, construing the language of the Mechanic's Lien Law, relating to improvements on land, it was held that gas fixtures screwed on pipes in the walls and mirrors attached thereto by hooks or supports, some of which were fastened with screws to the woodwork and others driven into the walls, and which were capable of being easily detached from their supports without interfering with or injuring the walls, were not appurtenances to the

building. In Drew v. Mason, 81 Ill. 498, 25 Am. Rep. 288, the Supreme Court of that state, in construing a statute relating to mechanics' liens for work and materials furnished in "building, altering, repairing or ornamenting a house," held that furnishing materials and performing labor in placing a lightning rod on a house was not within the terms thereof; and in O'Neil v. Manufacturers' Automatic Sprinkler Co., 143 App. Div. 56, 127 N. Y. Supp. 692, where it appeared that in the construction of a new building a sprinkler system was being installed which embraced a number of pipes attached to a metal frame that supported the roof of the dock, a scaffold furnished for the performance of that work was furnished in connection with the erection of a building. So far as appears from the evidence in this case, the sprinkling pipes upon which plaintiff was at work at the time of his injury were not attached to the building itself in any manner whatsoever, still less in a permanent one. In respondent's brief the statement is made that these pipes ran along different parts of the building, and were "permanently attached to it." We have carefully examined the evidence, and fail to find any justification for this statement, nor is respondent able to point out any except as it may be found in a single sentence in the testimony of defendant's superintendent, to the effect that:

"In putting up these pipes the whole roof was covered with pipe a certain distance apart. That is, in the ventilator and under the roof."

It is quite apparent that this statement has reference to the proximity of the pipes to each other rather than to their annexion to any part of the building. One thing may cover another without necessarily being attached to or forming a part of it. So far as the evidence discloses, this sprinkler system was no more a part of the building than a fountain in the center court of a building might be said to be a part thereof. Even if there had been some annexation to the walls or roof of the building itself, whether such annexation constituted an alteration in the building might depend to some extent upon the character thereof. In a length of rubber hose had been attached to a bibcock in the wall of this building for the purpose of extinguishing fires, we think it could hardly be claimed that such hose so attached constituted an alteration in the building. It cannot be, if the method of attachment is similar, that the fact that in one case the conduit is flexible and in the other rigid, results in different characterization. Without attempting an exhaustive definition, it would seem that to constitute an alteration in the building the sprinkler system must be in some manner installed so as to become an integral part thereof, and change its structural quality. It may be that, even though the pipes could be shown to be in some manner attached to the building, it would become a question of fact for the jury rather than one of law for the court whether such annexation constituted an alteration in the structure itself. In this case the learned trial court charged as matter of law that the installation of these pipes in the manner here disclosed was within the meaning of the act an alteration of the building itself. We deem this to be fatal error.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

JENKS, P. J., and WOODWARD and RICH, JJ., concur. HIRSCHBERG, J., dissents on the sole ground that he regards the installing of a sprinkler system in a plant as an alteration within the meaning of the statute.

