HARRY EMMONS,

*vs.*

D. A. SCHULTE., INC., a corporation of the State of Delaware, and HESSLER, INC., a corporation of the State of Delaware.

*New Castle, March 2, 1923.*

Advertising signs on the outer walls of a building are not an "alteration" of or "addition" to the building, which the lessee covenants not to make without consent; they neither varying nor changing the form or nature of the building nor being part of it.

Putting advertising signs on an office and store building *held*, under the evidence, not to constitute waste in the sense of depreciating the market value of the building, within the lessee's covenant not to suffer or commit waste.

For a lessee of a business building to put on it signs advertising the business of others is not an unlawful or improper use, in the absence of restrictions in the lease.

The exception in lease of a store and office building of two rooms as an office for use of the lessor is not repugnant to demise.

By exception in a lease of a business building of two rooms for office of the lessor is included the right to use for advertising purpose the outside walls bounding those rooms.

INJUNCTION BILL. The complainant, being the owner of the three-story building, known as the Law Building, located at the southwest corner of Ninth and Market streets in the City of Wilmington, on the fourteenth day of November, 1919, leased and demised the same to the defendant D. A. Schulte, Inc., for the term of twenty years, at the rental of $12,500 per year for the first ten years and of $15,000 per year for the last ten years of the term. After a description of the premises, the lease sets forth numerous covenants, among which the following appear:

"2. * * * That it (lessee) will not suffer nor commit any waste of the premises."

"5. That it (lessee) will make no general alterations or material additions to or upon said premises without the consent of the said lessor first being obtained in writing (but the lessor will consent to alterations which will not weaken or depreciate the value of the building); all alterations or additions shall be upon the sole charge and responsibility of the lessee; and it (lessee) will protect said building and premises from any lien or charges whatsoever by reason of said alterations or improvements."

The last paragraph of the lease is as follows:

"The lessor, however, excepts and reserves for the personal use of himself, so long as he may desire to occupy the same as law offices the two rooms on the second floor of said building fronting on Market and Ninth streets, and the small hall room adjoining them, now occupied by him, for the use of which during the term of said occupancy the lessee is to be allowed a credit of forty-one and $66/100$ dollars per month on account of the rent reserved in this lease."

On September 15, 1920, the lessee, D. A. Schulte, Inc., made an agreement in the form of a lease with the defendant Hessler, Inc., under the terms of which the latter was given the right to employ a portion of the wall space of the building "for the erection and maintenance of advertising display signs and for advertising purposes." The space covered by this agreement was that portion of the outside walls of the second and third floors of the building on its Ninth street side, between the corner of Ninth and Market streets and the third window from Market street. This space contains three panels of wall between windows in the second and third stories. The windows in the third story are directly above the windows of the second story and are of the same size. The

windows are double windows five or six feet wide. The first panel extends from the corner to the first tier of windows; the second panel extends from the first tier of windows to the second tier; and the third panel extends from the second tier of windows to the third. The second story windows in the first two tiers are windows that open into the law offices occupied by the complainant. All that portion of the first two panels between the floor levels of the second and third floors constitutes the outer Ninth street wall of the law offices reserved by the complainant for his occupancy, as does also about two or three feet of the third panel.

The lease from D. A. Schulte, Inc., to Hessler, Inc., contains the provision that it is made under and subject, and in all respects subordinate, to the lease between the complainant and D. A. Schulte, Inc., above referred to.

Shortly after renting the advertising space from Schulte, Inc., the defendant Hessler, Inc., proceeded to fill two of the panels above described with signs. The signs are about twenty-two feet by seven feet, and extend from the floor level of the second story to the top of the wall. They are constructed by fastening runners, two inches by four inches by twenty-two feet (three for each sign), to the brick wall of the building. Holes are drilled in the mortar between the bricks and plugged with wood; and stay nails driven into the wood hold the runners to the wall. The signs are painted on sheet iron fastened inside of frames, and the frames are attached to the runners on the wall. The frames appear to stand out from the wall about six inches and are about an inch in thickness. The signs thus present the appearance of large, framed pictures.

The first panel next to Market street contains an advertisement of a dairy company, and the second panel now contains an advertisement of Wrigley's P. K. chewing gum. At present, there is no sign occupying the third panel. The bill, however, charges that unless restrained by this court, Hessler, Inc., will place signs in the third panel.

The case was heard on bill, answers and oral testimony adduced before the Chancellor.

*Horace G. Eastburn* and *Harry Emmons*, for the complainant.

*Robert Penington* and *Charles C. Keedy*, for the defendant Schulte, Inc.

*Frank L. Speakman*, for the defendant Hessler, Inc.

THE CHANCELLOR. Complainant bases his claim for relief upon the following contentions, viz.:

First, that the erection of the signs constitutes an alteration of the building of such character as to depreciate its value, and is, therefore, in violation of the covenant of the lease relating to alterations and additions.

Second, if not an alteration, the signs are an addition to the building, and the same not having been consented to by the complainant the covenant of the lease is therefore violated.

Third, the use of the Ninth street wall for general advertisement purposes constitutes waste, and is violative of the covenant in that regard.

Fourth, the use of the Ninth street wall for general advertisement purposes is entirely different from the use to which the walls had theretofore been put, and was therefore an unlawful and improper use of the same.

Fifth, that in excepting and reserving for his personal use for law offices the rooms on the second floor, the outside surface of the Ninth street wall contiguous to said rooms formed part of what was excepted, which would give to the complainant all rights which he had in such portion of the Ninth street wall before the lease to Schulte, Inc., was made; and Schulte, Inc., would therefore, have no right to use such portion of the wall for advertising purposes. But if the exception and reservation did not carry with it the portion of the outside wall as parcel of the exception, it did carry with it whatever was incident to the use of the rooms for office purposes, in the absence of restrictions to the contrary, and the exclusive use of the walls for advertising purposes was one of such incidents.

The defendants take issue with all the foregoing propositions. They insist that when the lease was made to Schulte, Inc., of the building, the right to the use of the walls of the building for advertising purposes was thereby conferred upon the lessee, and that

the reservation of the rooms for law offices in no wise derogates from that right.

I am of the opinion that the first and second points above mentioned are not well taken. Alteration of a building has been defined as varying or changing the form or nature of such building without destroying its identity. "The idea is that the identity of the subject is preserved, although the form or nature may have been modified or changed." *Davenport v. Magoon*, 13 *Or.* 3, 4 *Pac.* 299, 57 *Am. Rep.* 1. In *Grady v. National Conduit & Cable Co.*, 153 *App. Div.* 401, 138 *N. Y. Supp.* 549, where the question was whether the installation of a sprinkler system constituted an alteration of the building within the meaning of the Labor Law of New York, the court said:

"Without attempting an exhaustive definition, it would seem that to constitute an alteration in the building the sprinkler system must be in some manner installed so as to become an integral part thereof, and change its structural quality."

The signs in question in no sense vary or change the form or nature of the building, nor have they become a structural part of it. It is equally clear also that they do not constitute an "addition" to the premises. In *Holbook v. Chamberlin, et al.*, 116 *Mass.* 155, 17 *Am. Rep.* 146, it was said that "'all future erection or additions' to or upon the premises is limited, in purpose and effect, to new buildings erected or old buildings added to." If it were a question here whether the signs in question are fixtures passing with the realty, I apprehend they would fail completely to meet the tests usually applied in determining such questions. I cannot regard the signs as a part of the building. Being no part of it, they cannot, therefore, be said to constitute an addition to it.

The language of the covenant in regard to additions and alterations seems to make some distinction between the two insofar as consent from the lessor is concerned. But, taking the view, as I do, that the signs are neither additions nor alterations, there is no occasion to consider what, if any, distinction between them in this particular the lease draws, nor the effect thereof.

The third contention is that the use of the wall for general advertisement purposes constitutes waste. If so, the pertinent covenant of the lease is violated and the continued maintenance

of the signs should be enjoined. The complainant adduced testimony to support this contention. The testimony comes from real estate experts, and the effect of it is that the presence of the signs on a building of the character of this building, located as it is in the center of the city, gives the building a bad reputation, makes it very unsightly, and tends to make people believe that the building is poorly located for business purposes, for the reason that, if such were not true, the owner would not be driven to the necessity of turning its walls into a sort of advertising billboard in order to obtain revenue; and by reason of the foregoing considerations, the value of the building is permanently impaired. These witnesses testify that the property would not sell for as much, the signs being on the building, as it would if the signs were not there. Witnesses, likewise real estate experts, testify in behalf of the defendants that the presence of the signs, the building being under lease for twenty years, can have no effect on the permanent value of the premises. Thus the real estate experts disagree.

I take it to be indisputable that the complainant, being the reversioner, cannot maintain his bill on the ground of waste unless he can show damage to the reversion. Hence arises the necessity of showing to the court that the signs impair the building's market value (both sides having argued the case on the assumption that if such impairment of value is made out, it constitutes waste), or do damage of some other permanent character. There is no showing of damage to the building other than an impairment of its selling value, for no witness has assumed to say that the physical structure of the building has been injured by the signs. In this regard the case is to be differentiated from the case of *Hayman v. Rownd*, 82 *Neb.* 598, 118 *N. W.* 328, 45 *L. R. A.* (*N. S.*) 623, cited by the complainant, for in that case the threatened erection of the sign was to be in such manner as, under the finding of facts, would damage the physical structure of the walls, and therefore result in waste to the building.

This being so, the determination of this branch of the case depends on whether the evidence shows that the market value of the building is as a fact depreciated in the manner suggested by the witnesses for the complainant. Upon careful consideration of the evidence adduced, I am driven to the conclusion that dam-

age of the character claimed is not made out by the testimony. In saying this I mean no disparagement of the expert witnesses for the complainant. Against their judgment stands the judgment of other experts of equal standing in the community. And the reason of the situation prompts me to accept the view of the latter. The building in question is to be regarded as a revenue producing building. It is occupied by subtenants under Schulte, Inc., on the lower floor for merchandising stores of various kinds, and as a broker's office; on the second floor, by the complainant, as a lawyer, by a trade association and a life insurance company for offices, and by a jeweler; and on the third floor as a lodge room.

The value of such a building is fixed by its location, the prospect of enchancing values incident thereto, the character of improvements thereon and the annual rental yield. These are the chief elements going to give its value to the premises. So far as the complainant is concerned, the rental value cannot be affected by the signs for the lease assures him a rigid sum throughout the length of its term. If as a fact the signs make the building less attractive to prospective tenants, and thus tend to reduce the rents, Shulte, Inc., the lessee, will be the sufferer. The lessor is not injured thereby, unless when he comes into possession at the end of the term the alleged adverse influence of the signs upon the rents will continue by force of what I may call the momentum of the past. For the present, however, the rental value of the building, so far as the complainant is concerned, cannot be damaged by the signs. And the same is true with respect to any grantee of the reversion, for such grantee would take title subject to the lease, and during its continuance could receive no more and no less by way of rental than the fixed sum named in the lease. As a matter of fact, however, it appears that the erection of the signs has not impaired the rental value of the building, for the only testimony upon the subject shows that rather than there having been difficulty in the securing of tenents under Schulte, Inc., the contrary is true, and that it has been possible to secure larger rents since the signs have been erected than were secured before.

If, therefore, there has been damage to the value of the building, it must be because of an impairment which will become manifest after the termination of the present lease. It would seem self-

evident that the presence or absence of the signs can have no effect upon the value of the building as of a date subsequent to the termination of the lease, insofar as such value is fixed by the location of the premises, the prospect of enhancement in property values in the neighborhood or the nature and character of the improvements (it being found as before stated that the signs are not erected in such way as to damage the physical walls). If there be such damage as of a date subsequent to the termination of the lease, it must, therefore, be due to the fact that the signs had previously cast such aspersions upon the building that tenants will find it unattractive and the rents will, therefore, be diminshed. I am persuaded that this will not be the case. Not only does the testimony of the real estate experts produced by the defendants seem acceptable to me on this point, but the present effect of the signs upon rents seems conclusive of the matter. It would appear plain that, even if the signs can have any adverse effect upon the rentals (which as indicated is not the case), yet such effect would immediately disappear upon the removal of the signs by the reversioner when he comes into possession at the end of the term. But, if, perchance, I am in error in thus believing that the possible adverse effect of the signs would disappear immediately upon their removal, but that the same would in fact continue by force of its own momentum for a period of time, it would seem that such continuance could not be for a great while. The lease in question has eighteen years more to run, and the right to display the signs which Hessler, Inc., has acquired from Schulte, Inc., terminates, under the terms of the contract between them, three and one half years hence, subject to be extended from year to year. So far as now appears, therefore, the building will have been free from the signs complained of for a period of over fourteen years when the complainant or his grantee comes into possession upon the termination of the lease. If the presence of the signs can be said ever to have attached any stigma to the building, it would seem reasonable that in the course of fourteen years it would have entirely disappeared. Assuming that waste may be committed by impairing the market value, I am unable to bring my mind to the conclusion that the defendant Schulte, Inc., has committed it in permitting the erection of the signs in question.

The fourth contention of the complainant is that the use of the wall in question for general advertisement purposes is entirely different from the use to which the walls had theretofore been put, and was therefore an unlawful and improper use of the same.   In *Kretzer Realty Co. v. Cusack Co.*, 196 *Mo. App.* 596, 190 *S. W.* 1011, the following obiter is found:

"We believe that, in a proper case, it might with much force be contended as a matter of law that a tenant of a dwelling house  *  *  *  could not grant to a third person the privilege of painting a chewing gum sign covering one entire side thereof, because it would be a use of the wall inconsistent with the lawful and the reasonable enjoyment of the property, but as to this we do not rule."

Nor, under the facts of the instant case, am I called upon to rule upon such case, or one analogous thereto.   For here the building is a business property, rented and used by various persons engaged in various pursuits of a mercantile and other nature.   In a building of this kind, the law seems well settled that, unless the lease contains restrictions to the contrary, the tenant may exclusively occupy the outer walls for advertising purposes, either to advertise his own business or that of third persons.   He may derive the profit therefrom that accrues to him indirectly through advertising his own business carried on within, or he may if he choose derive the profit from selling the space to others to advertise their business, provided that in so doing he does no injury to the freehold.   *Riddle v. Littlefield*, 53 *N. H.* 503, 16 *Am. Rep.* 388;  *Baldwin v. Morgan, et al.*, 43 *Hun.* (*N. Y.*) 355;  *Lowell, et al., v. Strahan*, 145 *Mass.* 1, 12 *N. E.* 402, 1 *Am. St. Rep.* 422;  *Salinger v. North American Woolen Mills, et al.*, 70 *W. Va.* 151, 73 *S. E.* 312, 39 *L. R. A.* (*N. S.*) 350; *Broads, et al., v. Mead, et al.*, 159 *Cal.* 765, 116 *Pac.* 46, *Ann. Cas.* 1921C, 1125;  *Forbes v. Gorman*, 159 *Mich.* 291, 123 *N. W.* 1089, 25 *L. R. A.* (*N. S.*) 318, 134 *Am. St. Rep.* 718;  *Kretzer Realty Co. v. Cusack Co.*, *supra;  Underhill on Landlord and Tenant, par.* 272, *p.* 401.

I am constrained, therefore, to disagree with the fourth contention of the complainant.

The fifth and last contention of the complainant is that, by reason of his rights under the reservation of the rooms on the second floor for law offices, he has the exclusive right to the con-

trol and use of the walls surrounding his offices, at least so far as the use of the same for advertising purposes is concerned, and that the signs, being on said walls against his consent, are there without right, and their further presence should be enjoined.

Some discussion was had at the argument upon the question of what is the legal relation between the complainant as occupant of the law offices and Schulte, Inc., his lessee. Is the complainant in possession of the rooms as the owner of the fee, never having made a present demise of them to the lessee, or is he to be regarded as in possession as a subtenant under his tenant?

If the former, then the point is made that the attempted exception of the rooms from the operation of the lease is void for repugnancy. In this connection, the defendants cite *Pynchon v. Stearns*, 11 *Metc.* (*Mass.*) 312, 45 *Am. Dec.* 210. In that case the court says:

"The general principle is, that where an estate is expressly granted, and there follows a reservation, exception, or condition, which destroys the grant, it is void, being repugnant to the thing first granted."

The facts involved in the cited case show the so-called lease to have been for life and the reservation turned it into a tenancy at will, and this was held to be in violation of the principle quoted. This case is manifestly not pertinent here.

Neither a reservation nor an exception of the kind here involved is to be held void unless it be repugnant to the grant or demise.

Speaking of a reservation, Lord Coke says:

"Some time it hath the force of saving or excepting. So as some time it serveth to reserve a new thing, viz. a rent, and some time to except part of the thing in esse that is granted." *Co. Litt.* 143a.

And in *Shep. Touch.*, 80, after defining a reservation as some new thing raised out of that which was granted before, it is said:

"This doth differ from an exception, which is ever a part of the thing granted, and a thing in esse at the time."

These ancient authors recognize the legal propriety of making a grant or demise in general terms and then saving or excepting therefrom a part or parcel thereof. But, it is said, an exception cannot be of a thing specifically leased, as for instance, in a lease

of twenty houses, an exception of one of such houses is void. *Sheppard's Touchstone*, 78; *Dorrell v. Collins, Cro. Eliz.* 6. Such was the case also of *Honneby v. Clifton*, 4 *Dyer*, 264b, where in a demise of a house and shops, excepting the shops, the exception of the shops was held void. The report of the case states:

"Also note, the exception of the shops is of all the shops, which is directly contrary to the premises of the lease of them; therefore it is a void exception."

From which it is to be inferred that, if the exception had been of only a part of the shops, the exception would have been good as leaving something for the premises of the lease to operate upon.

The question of whether there be a repugnancy between the demising portion of a lease and the exception seems to turn upon the question of whether, the exception being allowed to stand, there be something left for the language of the demise to operate upon. Though among the illustrations of exceptions which are said to be void for repugnancy, as for instance the illustration found in *Co. Litt.* 47a, of a lease of twenty acres excepting one acre, some may be selected which appear to be out of harmony with this statement, yet reason and more modern authorities join in holding that, if the lessor describes the demised premises as a certain whole excepting therefrom a designated part, there is no such repugnancy as will avoid the exception. This manner of description may be a mere convenience, and if parties find it more convenient to so set forth the words of description, there can be no reason in refusing them permission to do so. Indeed, in modern conveyancing, such a method of description is commonly resorted to. In such case, there is no repugnancy, for effect can be allowed to all parts of the instrument. I conceive that this view is but a special application of the general rule of construction that the intent of a writing shall be gathered from its whole contents. In the follwoing cases language is found supporting the validity of an exception of a part from the whole: *Washington Mills Emery Mfg. Co. v. Commercial Fire Ins. Co.*, (*C. C.*) 13 *Fed.* 646; *Cornell v. Todd*, 2 *Denio* (*N. Y.*) 130; *Schoenberger v. Lyon*, 7 *Watts & S.* (*Pa.*) 184; *Adams, et al., v. Warner, et al.*, 23 *Vt.* 395, 414; *Foster & Co. v. Runk*, 109 *Pa.* 291, 58 *Am. Rep.* 720. In the last-named case, the court said:

"Notwithstanding the very general character of the reservation, there was something left upon which the grant could operate."

And in the case from 7 *Watts. & S.*, (*Pa.*) *supra*, the very case here involved was put as an illustration of a good and valid exception. In that case it was said:

"A valid reservation, therefore, must be the saving of a smaller thing out of a greater, or a particular out of a general; as a room out of a house, or timber out of a manor."

If the language of the lease is to be regarded as excepting the rooms on the second floor of the building from the operation of the lease and leaving them in possession of the complainant as owner of the fee, I am so clearly of the opinion that the exception is to be recognized as valid that I would not have devoted the foregoing to a discussion of the proposition if the solicitor for Schulte, Inc., had not so insistently urged its soundness.

But if the complainant is not to be regarded as being in possession by virtue of the exception, but rather as a subtenant under his lessee, then it is urged that the complainant's lease, obtained by way of exception or reservation, is not limited in the length of its term. What is sought to be made of this point is not clear. In connection with it, the defendants cite *Reed, et al., v. Lewis, et al.*, 74 *Ind.* 433, 39 *Am. Rep.* 88, and *Idalia Realty, etc., Co. v. Norman*, 232 *Mo.* 663, 135 *S. W.* 47, 34 *L. R. A.* (*N. S.*) 1069. Nothing can be gathered from these cases, however, that is pertinent here. They announce the rule that leases for years to be good as such must have a certain ending and be for a term certain. In both of them the lease specified no certain time for its termination. In the former it was indicated that the court viewed the lease as conveying a fee-simple interest, and in the latter it was concluded that the lease was from year to year rather than for will. In neither case was it held that the instrument was entirely void, and that no interest had passed under it. Manifestly, therefore, these cases are of no value in the instant case.

That the complainant has an interest under the terms of the contract of lease made between him and Schulte, Inc., which in a proper case entitles him to the protection of this court, appears clear. What might be the precise nature of that interest, whether

it be under the exception stated in the instrument, or as a sub-
tenant under his lessee, it is not necessary for me to determine.
The material fact is that he is rightfully in possession under an
agreement and the defendant, Schulte, Inc., is receiving compen-
sation from him in the way of a concession off the rent specified
to be paid by it.

The sole question, therefore, would seem to be: What, under
the agreement, is he in possession of, and what are his rights there-
under? In answering this question, I am unable to see why the
rules applicable to the construction of leases as between landlord
and tenant in the matter of the description of the premises de-
mised should not be resorted to. Plainly such would be so if the
true relation between the parties is that of tenant and subtenant.
If such be the relation, then the rule hereinbefore accepted in
disposing of the fourth contention favorably for the defendants is
applicable, unless there be someting in the features of this case to
distinguish it in principle from the cases supra in support of that
rule.

The defendants themselves, as before indicated, rely on that
rule to support their right to place the signs where they are. But
they insist that though the right to the exclusive use of the out-
side walls for advertising purposes exists in favor of a tenant of
an entire building, or of a whole floor or story (there being no re-
striction to the contrary in the lease), it does not exist in favor
of one who is tenant simply of a room in the building. And in
support of the distinction thus sought to be drawn between the
whole building, or a floor, or a story thereof, on the one hand, and
a room therein, on the other, they refer to the following language
uttered by way of obiter in *Lowell, et al., v. Strahan*, 145 *Mass.*
1, 12 *N. E.* 401, 1 *Am. St. Rep.* 422:

"The words 'first floor' in the building are equivalent to 'first story' of
the building, and naturally include the walls. The apparent intention is to
separate a section of the building, as a distinct tenement. The words 'first
floor' define the lower and upper boundaries of the building, but there is nothing to fix
the lateral boundaries except the boundaries of the building. In this respect
the words differ somewhat from the word 'room.' 'Floor' means a section of the
building between horizontal planes. The words 'in building' show that the
section is of the whole building, and not of a part of it. The word 'room' in-
cludes a description of the perpendicular as well as of the horizontal planes

which bound the parcel of the house described by it, and excludes the outside of lateral walls, at least when they constitute the walls of another room, as clearly as the words 'first floor' exclude the flooring of the story above it."

If the application of this dictum is confined to the inner walls of a room which in turn constitute the walls of another room, it is doubtless sound. In that case, the other side of the vertical walls of the room would be exactly similar to the other side of the horizontal walls of a floor or story. But I can discover no rational basis on which to accord to a section of a building which happens to be a suite of rooms called a "floor" the right to the use of the outside walls contiguous thereto, and to refuse to accord to a section of the building which happens to be only one room, a similar right. The only difference between the two consists in the number of rooms leased. If there be any particular virtue attaching to a "floor" whereby it acquires outside wall rights which are denied to a smaller portion of the building, then it is conceivable that a tenant might be in possession of all the outside rooms on a floor of the building, but, if there be one or a few inner rooms on the same floor not in his tenancy, he ought to be denied the use of the outside walls, for in such case he would not be the tenant of a "floor" or "story," but simply of a number of rooms. It would be difficult to reconcile such a result with reason. If it be legally sound to accord to the tenant of a floor or story of a building the exclusive use of the outside walls for advertising purposes (and the authorities clearly hold that it is), then there is no logical escape from the conclusion that a room or rooms should be accorded a similar right. The earliest case of which I am aware (*Riddle v. Littlefield, supra*) presented the case of an outside room and held that the tenant was exclusively entitled to the use of its outside walls for advertising purposes.

If, therefore, the complainant is to be regarded as tenant under Schulte, Inc., the rule of construction applicable as between landlord and tenant gives him the right to the exclusive use of the outside walls. But if, on the other hand, the complainant is not in possession as tenant to Schulte, Inc., but solely by virtue of his rights as an owner of the fee who has saved and excepted out of the lease the rooms in question for use as law offices, the same rule ought to apply. For, after all, in either case in the last analysis,

the question comes down to one of construing the language descriptive of the thing demised in the one case and of the thing excepted in the other. It being solely a matter of description, therefore, I can discover no intervening circumstance which would make it proper to apply one rule of construction in the one case and to refuse to apply the same rule in the other.

It is the conclusion of the court that the complainant has the right to the exclusive use of the outer walls surrounding his offices for advertising purposes so long as he occupies said offices under the agreement. While it is not customary for lawyers to extensively and conspicuously advertise the fact of their professional connection, yet it is the usual thing for them to indicate by a seemly and appropriate sign that their offices may be found within. The complainant would have the right to place such sign on the outer wall of his offices. Yet, if the defendants are permitted to occupy the space in question with the signs complained of, his exclusive right to use such space for his own professional purpose is manifestly interfered with. The defendants would be permitted to tell him where he might place his own sign, at least to the extent of preventing him from placing it within the space they occupy with theirs. This would be taking from him his exclusive right. If, however, he did not wish to thus place his professional sign on the outer wall, but preferred to paint it on his windows as he would doubtless prefer to do, he would have the right to exercise his exclusive right to the walls by way of keeping the space surrounding the windows free from the signs of others. It can readily be seen how a lawyer would find it much more to his professional advantage to have the wall space surrounding his offices free from advertisements, with nothing appearing other than his own name upon the window, than he would to have his name and profession indicated on the windows of his office flanked with pictures of a huge milk bottle and of an immense package of Wrigley's chewing gum. In this sense, the negative sense of keeping off advertisements in general, the control of the outer wall space is as much of an asset to the lawyer, as, in the affirmative sense, is the right of the grocer who rents a corner store to placard the outer walls of his store with advertisements of the merchandise he has for sale within.

The bill prays an injunction against using the outer Ninth

street wall for advertising purposes. In view of the foregoing, the injunction will issue as prayed, except that it will be confined in its application to that portion of the wall that bounds the rooms occupied by the complainant under the terms of the exception in the lease. The defendant Hessler, Inc., having had full notice of the terms of the lease, will be likewise enjoined with the defendant Schulte, Inc.

Let a decree be prepared accordingly.