Booth, Chief Justice,
delivered the opinion of the court:
During the war the Government was in need of buildings to be used for hospital purposes. The plaintiff, Resort Hotel Company, a New Jersey corporation, owned and operated a hotel at Lakewood, New Jersey. The hotel building was a brick one of large dimensions, five stories in height, and surrounded by about twelve acres of ground. A garage, a power house, and a stable adjoined the hotel building and were adapted for use in connection therewith. Officials of the Government made a personal inspection of the hotel and the entire premises and found it suitable and available for the purposes of the Government. This statement is sustained by the fact that following the above-mentioned inspection, on December 15,1917, a written lease was executed by the parties. The lease contained the usual provisions inserted by the Government in leases of this character, i. e., the right to terminate the same by giving ten days’ advance notice in writing of an intention so to do, and the additional right to remove within thirty days subsequent to termination all buildings or improvements erected by the Government and affixed to the premises. The Government was to pay as rental for the premises $4,166.66 per month, reserving an option to extend the lease for yearly periods so long as the *700 public service might require. The Government went into immediate possession under the lease, and during the period of occupancy, among other alterations and changes, made the following: A leaky tin roof was replaced by a fiber roof at Government expense; subsequently, during the winter, accumulations of snow and ice upon the roof were removed by soldiers with picks and axes and the roof destroyed. In the fall of 1919 the tenant neglected to heat the building, resulting in damage to the heating plant; steam and water pipes froze and burst, damaging the walls and floors of the hotel. The building contained 354 guest rooms; in many of the rooms the plastered ceilings were broken and in some of them they fell upon the floor. The wall paper on many of the rooms was torn off, and in the rooms where it was allowed to remain it was stained, defaced by lead-pencil drawings, and in many instances posters pasted thereon. In practically all of the rooms open fireplaces had been permanently provided and over the fireplaces and mantels ornamental mirrors were hung. All of said fireplaces were removed, the mirrors taken down, and many of them totally destroyed.
Lakewood, New Jersey, is a winter resort; the hotel season generally extends from October to May. The hotel in catering to its winter guests had provided 80 private baths, glass-inclosed sun parlors, dining rooms, ballroom, billiard room, indoor tennis court, three large parlors, two hydrotherapeutic baths, barber shop, laundry, kitchen, indoor squash court, and servants’ quarters. (Finding Y.) The hotel was completely, furnished and equipped with furniture, carpets, draperies, china, glassware, kitchen utensils, etc., etc., all in fairly good condition. As a matter of fact, as the findings indicate, the building, its contents, and the surroundings seem to have been admirably adapted for the Government’s intended purpose.
The officials in charge of the building absolutely destroyed the indoor squash court by erecting, as admitted, a cement floor between the floor and ceiling of the court and a partition above the second floor so as to make three rooms out of one room that was used as the court. Not only this, a glass roof was substituted for the existing roof, and the alterations made, it was said, to provide an operating room, morgue, *701 and photographic room. The indoor tennis court was likewise destroyed by substituting a wooden floor for the cement and gravel one in place in order, it was said, to provide a machine shop. The large mirrors in the barber shop were all removed and the washbasins therein torn out. In the wash room twelve permanent washbasins were torn out, the door from the wash room to the barber shop closed, and partitions erected to convert the rooms to suit the tenant’s convenience. The men’s toilet room was converted into sixteen smaller toilet rooms with baths. The hydrotherapeutic bath was completely removed and stored away. One of the large dining rooms was converted into smaller rooms by the erection of partitions, and in these smaller rooms washbasins, gas jets, and closets were installed along the walls. The sun parlor was completely altered, the fountain therein was removed, and new floors . laid and partitions erected therein. In some of the guest rooms on the first and fourth floors the doors were removed and heavy iron doors substituted; iron bars were permanently placed in the windows in order to provide prison rooms. In many other guest rooms kitchen sinks, slop basins, stoves, and gas jets were installed. In a few of the rooms permanent walls were taken out, old windows closed up and new ones cut in the walls, and holes cut for new doors. For some reason not explained in the record, eight valuable chandeliers were removed from the parlors and ballroom, and either carried away or destroyed. The plaintiff did not receive them upon the surrender of the premises. The greater portion of the furniture in place when the Government went into possession was removed from the rooms, and finally, after two intermediate removals, was stored in the barn on the premises to the extent of the latter’s capacity, the remaining portion being left outside the same, subject to the weather. The roof of the barn was leaky and much of the furniture was ruined.
On June 13,1919, the Government notified the plaintiff in . writing that the lease would be terminated on June 30, 1919. Most of the patients were removed from the building on or prior to June 30, 1919, but the Government did not surrender possession until December 4, 1919.
*702 Predicating a claim for damages upon the commission of waste and for unpaid rental, plaintiff by this suit seeks to recover a judgment for $166,863.18.
The case is substantially one of fact. It is apparently nonessential to discuss in this case the doctrine of waste. The defendant justifies upon two theories; first, that the tenant under the lease was privileged to adapt the premises to hospital purposes and, even if not, the improvements added to them by the Government enhanced rather than depreciated their value.
The lease provided that all improvements affixed to or upon the premises should remain the property of the lessee, and expressly extended the right to the lessee to remove them within thirty days after the premises were vacated, and all the so-called improvements made by the lessee that could be removed were removed, so that the second defense is practically without force. It is clear that the defendant did not intend the lessor to profit to any appreciable extent by improvements. As a matter of fact, unless it may be said that the word “ improvements ” authorizes alterations, it is difficult to ascertain the precise number, nature, and value of improvements added to the premises. The benefits accruing to the plaintiff from this source, in our view of the case, were of diminished consequence.
As to the remaining defense, the lease involved did not authorize alterations, nor did it contain a stipulation authorizing a system of changes which would convert the building into a hospital. The building as it stood was to be used as a hospital. The officials of the Government were not misled as to its availability for use as a hospital, for prior to the execution of the lease the officials of the Government inspected the hotel building and premises, and the subsequent execution of the lease attests the fact that, in their judgment, the hotel was suitable for the intended purpose. The case of Davenport v. McGoon, 4 Pac. Rep. 299, does not sustain the defendant’s contention in this respect. There the lease expressly authorized the tenant to make alterations so as to adapt the leased building to the lessee’s purposes. Both parties to the lease conceded by the terms of the same that the building leased was not adapted to the *703 lessee’s use, and express authority was given to alter it to the extent necessary for the lessee’s use. It did not, however, as the court held, extend to the right of the lessee to change the identity of the structure or to tear it down. The real issue in the instant case is not the extent of the right of the lessee to adapt the hotel to hospital uses, but whether what the defendant did went way beyond any possible right of this character and resulted in the commission of waste. We have heretofore in this opinion recited in detail the changes and alterations, including treatment of contents of the building, made in and upon the same; from them an inference is deducible that the defendant determined upon a' course of procedure, with reference to occupancy, that had for its purpose an intent to alter and change the .inside of the building to conform to what the defendant wanted, irrespective of the result to the structure and loss to the owner. No attempt seems to have been made to avoid the permanent alterations of the building if permanent alterations served a convenience rather than a necessity. Beyond doubt, the hotel when possession was surrendered to the owner, would not have been recognized as once a hotel building, in so far as its interior structure was concerned.
We are unable to perceive wherein the written lease by any of its stipulations, or the law in reference to implied covenants, authorized the doing of what the defendant did. The plaintiff cites a number of State cases wherein it is held that the removal of doors, chandeliers, and other fixtures constituting a material part of the freehold, is voluntary waste. Regan v. Luthy, 11 N. Y. Supp. 709; McCullough v. Irvine, 13 Pa. St. 438. To the same effect, respecting destruction and removal of fixtures, as well as changing the identity of the property, are the following cases: Beekman v. Van Dolsen, 63 Hun 487; Peer v. Wadsworth, 67 N. J. Eq. 191; Agate v. Lowenstein, 57 N. Y. 604; Hayman v. Round, 82 Neb. 598; Cosgriff v. Dewey, 164 N. Y. 1; 31 Corpus Juris, 1221.
The Government employed an interior decorator to examine the building and estimate the cost of restoring it to the condition it was in when received. The estimate reported totaled $246,380. The record establishes the fact *704 that the reported estimate was predicated upon the cost of new furniture and equipment to replace the old, without considering the important item of depreciation. While the furniture and equipment involved were suitable for present uses, much of it was acquired some time ago and was obviously not equal.in value to new furniture. The record, we think, establishes a loss and damage in this respect of $92,140.
Possession of the building was not surrendered by the Government in accord with its notice to quit. On the contrary, the Government remained in possession until December 4, 1919, and paid no rent therefor subsequent to June 30, 1919. At the rate of rent stipulated in the lease the plaintiff is entitled to $21,370.94, less $9,435 paid to the plaintiff as rent or compensation for use and occupation. We therefore think the plaintiff is entitled to a judgment for $104,075.94, an amount arrived at after giving the Government credit for the said $9,435 paid as rent and for improvements of value added to the premises.
Judgment for $104,075.94 will be awarded the plaintiff. It is so ordered.
Williams, -Judge; Lettleton, Judge; GkeeN, Judge; and GRAham, Judge, concur.