## Colonial Federal Savings and Loan Assn. v. Porreca et al.

*William F. Leopold* and *Floyd W. Tompkins*, for plaintiff.

*Joseph Rappaport* and *Sheldon W. Farber*, for defendant Herman.

*George D. Kline*, for defendant Porreca.

*O. Charles Broderson* and *Russell Miller*, assistant city solicitors, for defendants Buckley and Flanagan.

CRUMLISH, J., November 27, 1946.—This is a bill to compel the recession of the building at 1328 Walnut Street, Philadelphia, to the building line established on January 15, 1894, pursuant to an ordinance of June 30, 1892. Plaintiff corporation alleges that it owns the premises 1326 Walnut Street, Philadelphia, pursuant to a deed dated April 19, 1943; that defendant Thomas Porreca is the lessee, and defendant Frances Herman the owner by purchase on January 14, 1946, of the

premises 1328 Walnut Street, Philadelphia; that defendant Thomas Buckley is the Director of Public Works, and defendant Charles A. Flanagan is the Chief of the Bureau of Building Inspection, of the City and County of Philadelphia. Plaintiff further alleges that pursuant to an ordinance of the City of Philadelphia, dated June 30, 1892, the lines of Walnut Street between 5th and 22nd Streets were established and confirmed as of January 15, 1894; and that the said ordinance provides, in part:

"After the confirmation and establishment of said lines it shall not be lawful for any owner or builder to erect any new building, or to rebuild or alter the front or add to the height of any building now erected, without making it recede so as to conform to the line established."

Plaintiff alleges that the building at 1328 Walnut Street is the only building between 13th and Broad Streets that is not within the established lines. Plaintiff alleges that a building permit (No. 1 of January 1946) was issued by the bureau of building inspection, and approved by the bureau of highways (supervised by the department of public works); that the permit was for the installation at 1328 Walnut Street of a "new front of bricks, metal and glass as approved by building inspector"; that the permit was issued in violation of the aforementioned ordinance of 1892; that defendant Porreca, pursuant to his lease from defendant Herman, and with her knowledge, authority and consent, on January 25, 1946, removed the entire front of the building from the sidewalk level to the ceiling level of the first floor, and commenced the construction of a new front wall of brick, steel and glass on the old building line without making the rebuilt wall conform with the new line established pursuant to the ordinance of 1892, and extended the west party wall beyond the new building line. Plaintiff alleges that it has made demands on

January 3, 1946, and on numerous occasions thereafter, orally and in writing, upon the chiefs of the bureaus of building inspection and of engineers and permits, to revoke the aforesaid building permit, and to compel the owner, lessee and contractor to cease work pursuant thereto unless the front of the building is reconstructed to conform to the lines established under the ordinance of 1892; that on January 3, 1946, pursuant to the above demands the work was ordered halted until a legal opinion was rendered by the assistant city solicitor, and the work was halted until January 25, 1946, when it was commenced by defendants Porreca and Herman in violation of the stop-work order and of the ordinance. Plaintiff alleges that written demand was made upon defendants Flanagan and McLaughlin to revoke the permit and institute action against the owner and lessee to recede the front of the building to the new line, but that they have failed and refused to comply with the demands. Plaintiff further alleges that on January 26, 1946, through its attorneys, it gave notice to defendants Herman and Porreca, of its intention to institute legal proceedings to compel the recession of the front wall pursuant to the ordinance of 1892; and that on or about the same date, defendants McLaughlin and Flanagan, through their attorney (assistant city solicitor) orally agreed with defendant Porreca (acting for himself and Herman) that the work of rebuilding or altering the front of the building be permitted to proceed, upon the condition that the City of Philadelphia be not held liable to them for damages if the work be determined to be a violation of the ordinance of 1892. Finally, plaintiff alleges that rebuilding to the old line is an encroachment upon the sidewalk of Walnut Street and constitutes a nuisance and hazard, obstructing pedestrian travel and obstructing access of light and air to plaintiff's property; and that unless defendants Porreca and Herman are compelled to remove the encroachment, plaintiff

will suffer continual and irreparable injury; and that plaintiff is without other and adequate remedy at law. Wherefore plaintiff requests that defendants Mc-Laughlin and Flanagan be directed to revoke the building permit, and to enforce the provisions of the ordinance of 1892 by instituting proceedings to compel defendants Porreca and Herman to recede the building to the new line; and that defendants Porreca and Herman be directed to make the front of the building conform to the line established under the ordinance.

Defendant Frances Herman denies all knowledge of the repairs or alterations, of the building permit, and of all other details of the matter, and denies Porreca's authority to make repairs or alterations. The other defendants admit substantially all of the averments in the bill, but deny that the west wall was extended, or that the entire front from sidewalk level to ceiling level of the first floor was removed; they allege that all that was done was to replace the illegal component of the west wall by brick, and to remove the plateglass bulk window on the first floor front and substitute noncombustible material for the wooden base beneath it. Defendants further deny that the work done was of the type that requires recession under the ordinance of 1892, and deny plaintiff's right to bring this action even if there were a violation of the ordinance.

From the admissions in the pleadings, as offered in evidence, and from the testimony, the court makes the following

### Findings of fact

1. Plaintiff, a corporation organized and existing under the laws of the United States, has been owner of the premises 1326 Walnut Street, Philadelphia, since April 19, 1943.

2. Defendant, Frances Herman, is the owner of the premises 1328 Walnut Street, Philadelphia, by deed

dated January 15, 1946, said premises adjoining that of plaintiff on the west.

3. Defendant, Thomas Porreca, occupies 1328 Walnut Street under lease from Frances Herman.

4. Defendant, Martin J. McLaughlin, was the director of the Department of Public Works for the City and County of Philadelphia, under whose supervision was the bureau of highways. Defendant McLaughlin died on October 20, 1946, and Thomas Buckley was appointed director of the department of public works on November 8, 1946.

5. Defendant, Charles A. Flanagan, is the chief of the Bureau of Building Inspection of the City and County of Philadelphia·

6. The ordinance of the City of Philadelphia, June 30, 1892, authorized the widening of Walnut Street from Sixth Street to Twenty-second Street, and pursuant thereto a new building line was established as of January 15, 1894. The ordinance provides in part that:

"Section 2. After the confirmation and establishment of said lines, it shall not be lawful for any owner or builder to erect any new building, or to rebuild or alter the front or add to the height of any building now erected, without making it recede so as to conform to the line established, except as hereinafter provided."

7. Plaintiff's building is receded to the lines established and confirmed pursuant to the ordinance of 1892.

8. The building at 1328 Walnut Street is the only building on the south side of Walnut Street, between Thirteenth and Broad Streets, which has not receded to the building line established as aforesaid.

9. On December 6, 1945, an application for a building permit to make "alterations and additions" to 1328 Walnut Street was filed with the city authorities, re-

citing in part: "Install a new front of brick, metal and glass. . . ." Plans were not filed with the application. The application was approved by the bureau of highways and the bureau of building inspection, and building permit no. 1 of January 1946 was issued pursuant thereto.

10. Work under the permit was started on January 2, 1946. On January 3, 1946, plaintiff made demands upon the chiefs of the bureaus of building inspection and of engineers and permits to revoke the permit, and to order the work stopped unless and until the front of the building was reconstructed to conform to the building line established pursuant to the ordinance of 1892. On this same date, defendants Herman and Porrecca were ordered by the city to stop work until an opinion on the matter was rendered by the assistant city solicitor. They stopped work, and then started again on January 25, 1946. On January 28, 1946, defendants Herman and Porreca promised that they would not hold the city liable for any damages which might result if the work were subsequently determined to be a violation of the ordinance.

11. On January 26, 1946, demand was made upon defendants McLaughlin and Flanagan to revoke the permit and institute an action against defendants Herman and Porreca to compel recession to the new building line. On the same date, plaintiff notified defendants Herman and Porreca of its intention to bring legal action to compel a recession.

12. Prior to January 1, 1946, the entire front of the building, from the pavement level to the roof, protruded approximately four feet beyond the new building line. The portion of the west wall which protruded beyond the new building line was solid brick, without openings, from the top of the ground floor to the roof. The first floor front, from the pavement to the ceiling, consisted primarily of three columns which rested just within the old building line. The two corner columns

were wood and the other, about two thirds of the width of the front from the eastern column, cast-iron. The portion of the east wall which protruded beyond the new building line was solid, without openings, from the pavement to the roof. The space between the east column and the iron column was occupied by a large plateglass window with a narrow wooden frame around it. Below the large window were three small windows, about a foot high, each with a narrow wooden frame. The space between the iron column and the west column formed the doorway, leading into a small vestibule. The space between the west column and the new building line (the portion of the west wall which protruded beyond the new line) was occupied by a glass door leading into the same vestibule. Plaintiff's exhibits 1, 2, and 3 correctly portray the building as it then existed.

13. After the building permit was issued, the plateglass and three small windows, the framework around them, the two doors and their frames, and the ornamental work around the three columns were removed. The city building inspector required that the combustible material (wooden frameworks) be replaced by noncombustible material, and that brick or steel piers be erected to reinforce the girders supporting the upper stories. Plaintiff's exhibits 4, 5, and 6 correctly show the condition of the first floor front during various stages of the work. Brick piers were erected as directed. The spaces between the columns were filled in with noncombustible bricks. A doorway, to the left of the iron column, and two small windows, one on each side of the doorway, were left in the front wall. No work was done above the ground floor except the pointing of the bricks in the front wall. Plaintiff's exhibits 7, 8, and 9 correctly portray the building as it appeared after the work was completed.

14. Although the building does not cover any more area than it did prior to January 1, 1946, there now

are approximately forty square feet additional floor space.

15. The work was done under the direction of defendant Porreca with the knowledge and consent of defendant Herman.

*Discussion*

Defendants do not object to jurisdiction over the parties or the subject matter. No argument was made, or proof offered, to support the averment that plaintiff has no standing to bring the action. The question, however, has been considered. The chancellor is of the opinion that the ordinance is analogous to a building restriction running with the land, imposed in a deed for the benefit of adjoining or adjacent property owners, and that the reasoning of Keller, P. J., in De Blasiis et al. v. Bartell et al., 143 Pa. Superior Ct. 485, 491-94 (1940), holding that an adjoining property owner had the right to invoke the aid of equity to enforce a zoning regulation, is applicable in the instant case.

The sole question in this case is whether or not the work done to the front of the building at 1328 Walnut Street comes within the meaning of the word "alter" as used in the ordinance of June 30, 1892. The ordinance was not questioned by defendants and has not heretofore been made the subject of judicial interpretation. It provides, inter alia:

"Section 1. The Select and Common Councils of the City of Philadelphia do ordain, That the Department of Public Works, Bureau of Surveys, be, and is hereby authorized to revise the City plan, so as to make the width of Walnut street from Fifth street to Twenty-second street such as shall conform with the buildings thereon erected, as the same may be deemed practicable; such width to be uniform in each block.

"Sect. 2. After the confirmation and establishment of said lines, it shall not be lawful for any owner or

builder to erect any new building, or to rebuild or alter the front or add to the height of any building now erected, without making it recede so as to conform to the line established, except as hereinafter provided."

Plaintiff contends that the improvements made to the front of the building of 1328 Walnut Street come within the prohibition of the ordinance of 1892. On the other hand, defendants at the trial took the position that the work done to the property in question was "repair work", but in their arguments, requests for findings of fact and paper books abandon that distinction and take the position that the work does not amount to an alteration within the meaning of the wording of the ordinance under consideration.

The ordinance must be construed strictly, in the ordinary and popular acceptation of the terms used, and with regard to the object to be attained. The words "alter" and "alteration" have been defined in a number of cases: Brice's Appeal, 89 Pa. 85 (1879) ; Commonwealth v. Hayden, 211 Mass. 296 (1912) ; Bigelow v. Worcester, 169 Mass. 390 (1897) ; Paye v. City of Grosse Pointe, 279 Mich. 254 (1937) ; Brill v. Miller, 140 App. Div. 602, 125 N. Y. Supp. 865 (1910) ; Ex parte Woo Jan, 228 Fed. 927, 941 (1916) ; Earle v. Shackleford, 177 Ark. 291 (1928) ; Emmons v. D. A. Schulte, Inc., et al., 13 Del. Ch. 336, 340 (1923) ; Chicago Lumber and Coal Co. v. Garmer et al., 132 Iowa 282, 289 (1906) ; Youmans v. City of Osawatomie et al., 118 Kan. 767, 769 (1925) ; A. L. Carrithers & Son v. City of Louisville, 250 Ky. 462, 469 (1933) ; Henry Davenport v. L. B. Magoon, 13 Ore. 3, 7 (1884) ; Cawker et al. v. Trimmel, 155 Wis. 108, 112 (1913) ; White v. Perkins (Tex. Civ. App.), 65 S. W.(2d) 423, 427 (1933) ; see also 2 C. J. 1165-1166; 3 C. J. S. 898-900; 3 Words and Phrases (Perm. Ed.) 283, and pocket part; 64 A. L. R. 925n; 26 L. R. A. (N. S.) 120 and 125. The Oxford English

Dictionary (Clarenden Press, Oxford, 1933) defines "alteration":

"1. The action of altering or making some change in a thing.

"2. A change in the character or appearance of anything, viewed as a fact; an altered or changed condition."

And "alter":

"1. To make (a thing) otherwise or different in some respect; to make some change in character, shape, condition, position, quantity, value, etc. without changing the thing itself for another; to modify, to change the appearance of.

"2. *Intr.* To become otherwise, to undergo some change in character or appearance."

In construing a similar ordinance, dealing with the widening of Chestnut Street, City Solicitor Warwick, in his opinion of January 11, 1894, said (Opinions of the City Solicitor from January to December 1894, p. 11):

"The Ordinance provides: 'It shall be unlawful to erect any new building, or to rebuild or alter the front of any building now erected without receding.' I think this means a substantial alteration. If the brick work separating the two windows were taken out for the purpose of changing it from a dwelling house into a store, I think it would be clearly within the terms of the prohibition in the Ordinance, but, I am of opinion, that to merely change the size of the panes of glass, and replace old window frames with new ones, is not such an alteration as is contemplated by the Ordinance, and which would require a recession of the building. To hold otherwise would be such a narrow construction as would prevent an owner of property from replacing an old sash or door with a new one without receding. It certainly cannot mean that. In this particular case the front wall itself and the entire brick work remain intact as before the change."

Again, in his opinion of March 6, 1894, dealing with the widening of Arch Street, City Solicitor Warwick said (p. 45):

"From your letter I gather that Stewart, Ralph & Company intend cutting out the pier between two windows on the first floor, and setting in a flat bulk extending from the west side of the present west window to the east side of the present east window. In other words, changing it from a dwelling-house into a store by cutting away part of the front wall and substituting a bulk window. Whether this can be done without receding depends upon the construction given to the word 'altered' in the ordinance. The alteration must be a substantial one."

The term "repair" was distinguished from "alteration" in Commonwealth v. Hayden, supra; N. Y. Cent. & H. R. R. Co. v. County Commissioner of Middlesex, 220 Mass. 569 (1915); Boston & Albany R. Co. v. County Commissioners of Hampden, 164 Mass. 551 (1895); London County Council v. London, etc., Rwy. Co., 2 K. B. 72 (1906).

From an examination of the authorities, the chancellor concludes that: (*a*) The words "alter" and "alteration" are generally understood as meaning a change from some former state or condition and, in order to create a legal liability, the alteration should bring about some material or substantial change in the former condition; and (*b*) the word "alter" in the ordinance of 1892, means a material or substantial change in the "front . . . of any building now erected . . .".

What were the changes made to the front of the building? According to plaintiff's testimony the front, prior to the change, consisted on the ground floor of an entrance in the west wall and one on the west side of the front wall, and a plate glass bulk window extending eastwardly therefrom to the east wall; and

above that, a brick wall with two windows on the second, third and fourth floors; and a mansard roof. The bulk window and the westerly entrance were removed and a brick front substituted with an entrance in the center and two new windows, one to the east and the other to the west of the entrance; the west wall was bricked in; the second, third and fourth floors were left intact except for such pointing work necessary to bring them in harmony with the first floor in its finished condition. The testimony is substantiated by photographs admittedly showing the appearance of the front before, during and after the work was completed. Defendants called Mr. Biernhang, a city engineer of construction, who testified that he made an inspection of the building and found certain signs of defects in the front wall; and that he requested the contractor to remove a part of a cornice, and thereupon observed that the wooden girder which supported the brickwork within the second and third stories, on which the girder rested, was rotted at the end, the work had disintegrated, and the bearing had been reduced to a dangerous condition. That was why he ordered the raising of the piers. On further examination he observed that the girders were dangerous and "no good", with rotten ends, and ordered reinforcing work to be done in order to insure the safety of the upper portion of the building. He further testified that he ordered the reconstruction of the east piers on the end to provide a substantial bearing for the girders carrying the wall, and there was a wooden column which he ordered reinforced by a brick pier. He also ordered three piers to be built in the building at the points which were originally supporting the girders. He also ordered the west wall bricked up to provide structural support for the upper part of the wall. He further testified that brick piers were ordered because the old type of wood supports were combustible and unlawful,

and that the front could not be restored to its former appearance, even with the use of noncombustible materials. In his opinion, it was a repair job because it was not a substantial change to the front—"it was necessitated by the dangerous conditions, the structural condition of that building and there were no structural changes made in the structure of the front wall. The same structural conditions which were there are still there, except they were encased in brick." After viewing the photographs offered in evidence by plaintiff this witness testified: "Basing my opinion solely on these pictures, I wouldn't say that it is quite practicable to declare it an alteration job. I would call it a repair job."

Were the changes made to the front of the building material or substantial? The chancellor is of the opinion that they were. Aside from the fact that it was necessary to substitute noncombustible for combustible supports for the front wall in order to comply with the law, the whole appearance of the first floor of the wall was changed. The position of the entrance was switched from the westerly side to the center; the bulk window was removed and two smaller ones substituted with the remaining portion of the wall finished with solid brick.

A personal inspection of the front of the building by the chancellor makes it increasingly clear that the change thereto is a material and substantial one. The elimination of the bulk window and the side entrance have also provided the occupant of the ground floor with additional space for conducting his business. On the left, as you enter, there is space for two chairs to accommodate guests and on the right there is a well-appointed cloak room.

The chancellor, having seen and heard the witnesses, and after argument of counsel, a careful study of the evidence, and a personal inspection of the premises in

question, finds no difficulty in concluding that the alteration to the front of premises 1328 Walnut Street is within the prohibition of the ordinance of June 30, 1892. In passing, it might be said that his difficulty was in seeking to reach a conclusion coinciding with that of the city's representatives, i. e., that the change amounted to "repairs". To repair is to *restore* something to its former condition; not to *change* from its former condition. In the instant case, to build practically a new front on the ground floor of the building is not "repairs". In this connection, it was kept in mind that the construction given to a statute or an ordinance by those charged with the duty of executing it is always entitled to great consideration and should not be overlooked without cogent reasons, but such construction is not binding upon the courts. Such construction is a matter of law and not of fact; a well-recognized judicial function.

Finally, it may be well to mention that plaintiff notified defendants of its intention to claim the benefit which it derived as an adjoining property owner under the ordinance in question as soon as the work was started, and again before filing its bill. Therefore, it cannot be said that plaintiff lulled defendants into a false sense of security, or slept on its rights. Defendants knew of the risk they were taking and even agreed to hold the City of Philadelphia harmless in the event legal proceedings proved plaintiff's contentions to be correct.

*Conclusions of law*

1. The court has jurisdiction over the parties and the subject matter.

2. Plaintiff does not have an adequate remedy at law.

3. The changes made to the front of the building at 1328 Walnut Street constitute an alteration of the front of said building within the meaning of the ordinance of June 30, 1892.

4. The front of the building located at 1328 Walnut Street having been altered, said building must be receded to the building line of Walnut Street established and confirmed on January 15, 1894.

5. Thomas Buckley, having been appointed director of the department of public works on November 8, 1946, following the death of defendant Martin J. McLaughlin on October 20, 1946, the aforesaid Thomas Buckley is substituted for McLaughlin as a defendant in this action.

## Decree nisi

And now, November 27, 1946, it is ordered, adjudged and decreed as follows:

1. Defendants, Frances Herman and Thomas Porreca, are directed to make the front of the premises 1328 Walnut Street, Philadelphia, conform to the building lines established and confirmed on January 15, 1894, pursuant to the ordinance of June 30, 1892.

2. Defendants, Thomas Buckley, director of the department of public works, and Charles A. Flanagan, chief of the bureau of building inspection, are directed to take such steps as are, or may be necessary to insure compliance with the above directive and with the ordinance of June 30, 1892.

3. Defendants, Frances Herman and Thomas Porreca, shall pay the costs of these proceedings.

The prothonotary is directed to enter this decree nisi and to give notice to the parties, or their counsel of record, of the entry of this decree and, if no exceptions are filed within 10 days thereafter, the decree nisi shall be entered as the final decree, by the prothonotary, as of course.

NOTE.—An appeal from the final decree was subsequently withdrawn.