CAWKER and others, Executors, etc., Appellants, vs. TRIM-MEL, Respondent.

*October 31—November 18, 1913.*

*Landlord and tenant: Lease construed: "Alterations:" Electric wiring: Waste: Injunction.*

1. A contract appended to a lease, whereby the lessor agreed to furnish to the lessee electric current for incandescent or arc lamps at certain rates during the term of the lease, "provided, however, that the total price paid . . . shall not be less than $200 during any one year," did not require the lessee to take electric current from the lessor for heating or power purposes.

2. A covenant on the part of a lessee to make no "alterations" in the demised premises has reference, as applied to a building, to changes therein of a substantial nature, and is not breached by the making of small apertures in the wall and floor to admit electric wires.

3. The making of small apertures for the admission of electric wires, no appreciable damage resulting therefrom, did not constitute waste at common law as between landlord and tenant.

4. If it could be shown that damage would result from such act, the landlord would have a remedy, regardless of the fact that the premises would not be altered.

5. *It may be* that under a clause prohibiting alterations a change which was in fact an alteration might be enjoined even though it resulted in no damage to the landlord.

6. If a provision in a lease to the effect that "if tenants desire telegraphic or telephonic connections, the lessors reserve the right to direct the electricians as to where and how the wires are to be introduced, and without such directions no boring or cutting for wires will be permitted," applies to electric wires other than telephone or telegraph wires, then the clear implication is that the tenant has the right to install them, but under the direction of the lessors.

TIMLIN, J., dissents.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

In April, 1910, plaintiffs leased the store known as 240–242 West Water street, in the Cawker building, together with some space in the basement, to the defendant for the term of ten years, to be used as a restaurant and saloon. The lease contained the following provisions upon which appellants rely on their appeal:

(1) "It is mutually agreed and understood that said lessee shall make no alterations in the said premises without the consent of the said lessors first had and obtained in writing, under penalty of forfeiture of this lease and damages."

(2) "Said lessors shall furnish at their expense the steam for the steam heating apparatus in said premises, and that the heating and electric light apparatus, water pipes and gas pipes in said building shall be under the control and management of said lessors."

(3) "That he [the lessee] will obey and observe the rules and regulations of said building attached hereto numbered from 1 to 14, and that the said rules and regulations shall be deemed a part of this lease." ·

Rule 12 so made a part of the lease reads as follows:

"If tenants desire telegraphic or telephonic connections, the lessors reserve the right to direct the electricians as to where and how the wires are to be introduced, and without such directions no boring or cutting for wires will be permitted."

Attached to this lease was an agreement in regard to lighting, which agreement was referred to in the lease. The agree-

ment is in the form of a proposition made by the plaintiffs to the defendant and accepted by him.    It reads:

"We agree to furnish you at the premises known as 240–242 West Water street electric current for incandescent or arc lamps from 7 a. m. until 11 p. m. daily, except Sundays, and from dusk until 11 p. m. Sundays, for a term of ten years from July 1st, 1910; we to furnish the necessary lamps free of charge, all broken lamps to be paid for by you.    It being agreed and understood that if for any reason, without fault or negligence on our part, we are unable to supply the current either by our inability to connect our wires or by the disconnection of same, or otherwise, we shall be liable only for the loss of the amount due under this agreement for the time during which the current shall not be furnished.

"We will furnish you the current at the rate of ten cents per one thousand watts and allow you a rebate of forty per cent., provided the same is paid on or before the 10th of the following month for the current consumed during the previous month; provided, however, that the total price paid for electric current shall not be less than two hundred dollars during any one year.    We are to have access at all reasonable hours to inspect meters and to change the same, if necessary, and in default of payment of our bills we are hereby authorized to enter your premises and remove said meters and any other property belonging to the estate of E. Harrison Cawker and to stop the supply of electricity without notice."

It appeared that the owners of the building owned and operated an electric light plant therein for the purpose of furnishing light to tenants in the building.    It also appeared that when this action was commenced the Milwaukee Electric Railway & Light Company had extended its wires about twenty feet into the basement of the building under the saloon which the defendant was operating under his lease.    During the early part of the year 1913 the defendant installed an electric piano in his saloon and proposed to carry the wires of the Milwaukee Electric Railway & Light Company some distance further back into the basement and carry them through a half or three-quarter inch hole which he proposed to make in the floor

so as to connect with the piano. The reason assigned for not using the plaintiffs' electric current was that the piano was not adapted to the voltage of such current, while it was adapted to that of the current furnished by the other company. On March 5, 1913, the plaintiffs brought an action to enjoin defendant from connecting the wires of the Milwaukee Electric Railway & Light Company with his piano and secured a preliminary injunction restraining the defendant during the pendency of the action from installing or permitting to be installed any wires for the conveyance of electric current not under the control of the plaintiffs, or from making or permitting any alterations in said building without the consent of the plaintiffs first had and obtained in writing, or from boring or permitting to be bored any holes in the walls or floor of said building. The defendant on answer and affidavits moved to dissolve the injunction, and it was dissolved by an order of the court made May 17, 1913. Such order recited that it was made with the "condition that the defendant give reasonable notice to the plaintiffs of the time when he intends to install wires for the conveyance of electric current in the building leased by him of the plaintiffs that they may have an opportunity to supervise such installation, and the plaintiffs shall co-operate with the defendant to the end that such installation may be accomplished speedily and without delay."

Plaintiffs appeal from the order of dissolution.

For the appellants there was a brief by *Ogden & Landeck,* attorneys, and *Arthur H. Anderson,* of counsel, and oral argument by *L. M. Ogden.* They contended, *inter alia,* that an owner of property has the right to lease it upon such terms as he chooses, and to have the covenants of the lease kept inviolate, regardless of whether or not substantial damage would result from the violation. *Beckwith v. Howard,* 6 R. I. 1; *Kunemann v. Boisse,* 19 La. Ann. 26; 2 Taylor, Landl. & T. (8th ed.) § 691; *Peer v. Wadsworth,* 67 N. J. Eq. 191,

58 Atl. 379; *De Wilton v. Saxon,* 6 Ves. Jr. 106; *Leech v. Schweder,* L. R. 9 Ch. App. Cas. 463; *Dickinson v. Grand Junction C. Co.* 15 Beav. 260; *Stewart v. Winters,* 4 Sandf. Ch. 587; *Engle v. Thorn,* 3 Duer, 15; *Consolidated C. Co. v. Schmisseur,* 135 Ill. 371, 25 N. E. 795; *Star B. Co. v. Primas,* 163 Ill. 652, 45 N. E. 145; *Kirkpatrick v. Peshine,* 24 N. J. Eq. 206; *Anderson v. Rowland,* 18 Tex. Civ. App. 460, 44 S. W. 911.

For the respondent the cause was submitted on the brief of *Friedrich, Teall & Hackbarth.*

BARNES, J. Appellants do not claim that the common-law action for waste would lie or that any action would lie on the facts before the court, were it not for the express covenants of the lease. But they argue that they have the right to lease their property under such conditions as they see fit and they have the right to see that these conditions are fulfilled, no matter whether substantial damage results from their nonfulfilment or not. It may well be doubted whether a court of equity, which ordinarily grants its injunctive relief to prevent irreparable injury and damage, should or would use its remedy to protect purely technical or theoretical rights, but we will not discuss or decide the question because we do not think the proposed action of the defendant runs counter to the covenants of the lease, for the reason that what the defendant proposes to do is not an "alteration" in the leased premises.

Ordinarily the word "alteration" as applied to a building means a substantial change therein. It is expressly so held in *Comm. v. Hayden,* 211 Mass. 296, 97 N. E. 783, and this definition was adopted by this court in *Kresge v. Maryland C. Co.* 154 Wis. 627, 143 N. W. 668. It is substantially so held in *Bigelow v. Worcester,* 169 Mass. 390, 48 N. E. 1, where it is said that reshingling a building is not an alteration of it. The foregoing definition is not a hard-and-fast one in-

tended to apply to all situations, but we think it fairly applies to the one before us.

It was suggested on the oral argument, although no such contention is made in the appellants' brief, that under the agreements the defendant is bound to use the electric current generated by plaintiffs exclusively for all purposes. The contract does not so provide. It does not mention current that might be used for heating or power purposes. In fact it does not require the defendant to use any current, but he must pay a minimum of $200 a year whether he uses current to that amount or not. If he saw fit to use tallow candles instead of electricity for lighting, he might do so, but he would still have to pay $200 a year for electric current because he agreed to do so.

The real controversy arises over the covenant in the lease which prohibits the tenant from making alterations in the premises without the consent of the lessors. No claim is made that the connection which the defendant proposes to make will result in damage or injury to the building, and the showing made on the motion to dissolve pretty clearly showed that no substantial injury or damage would result.

The circuit judge decided that the proposed act of the defendant did not constitute an alteration of the premises and neither did it constitute waste, citing *Brock v. Dole,* 66 Wis. 142, 28 N. W. 334, and *Melms v. Pabst B. Co.* 104 Wis. 7, 79 N. W. 738. The first case arose between landlord and tenant and the second between life tenant and remainderman. In the first case it is said that any material change is waste, even though it enhances the value of the property. In the second it is substantially held that very material changes may be made by the life tenant, so long as the value of the property is not thereby depreciated. So we have a different rule applicable to the ordinary relation of landlord and tenant from that which applies to life tenant and remainderman.

We are not unmindful of the claim that an alteration in a leased building resulting in damage thereto would constitute waste at common law and would be enjoined by a court of equity, or of the argument that the word "alteration" in the lease must be given some effect, and that if it is held to mean change resulting in damage, it might as well have been omitted entirely.    Some courts have held that an express covenant prohibiting alterations to be made refers to those changes which a tenant might otherwise make without the consent of the owner.    *Kunemann v. Boisse,* 19 La. Ann. 26; *Engle v. Owen,* 3 Duer, 15; *Denechaud v. Trisconi,* 26 La. Ann. 402; *Websler v. Nosser,* 2 Daly (N. Y.) 186; *Whitwell v. Harris,* 106 Mass. 532.    It may be conceded for the purposes of this case that the principle underlying the decisions in these cases is correct, although the reasoning on which it is based is by no means invulnerable.    These courts must of necessity recognize the rule that there may be alterations which are material and those which are not, and in this latter class fall these changes which do not result in damage to the landlord, but which none the less are alterations.    See note to *Abel v. Wuesten,* 24 Am. & Eng. Ann. Cas. 393.    In all of the cases above cited it was practically conceded that the thing done constituted an alteration.    In one of the cases the tenant proposed to put up an addition to the building, and in two of the others partitions were so put in as to make two rooms where there was but one before.    The decisions only go to the point that where it is proposed to make an actual alteration in a building when the lease forbids alterations to be made, the courts will prevent the change although the landlord may not be able to show that he would be injured thereby.    The cases do not pretend to change or enlarge the meaning of the word "alteration," but simply hold that actual alterations not harmful will be prevented under an express covenant in a lease prohibiting them.    Here the thing proposed is so small and inconsequential that we do not think it could be said that it would consti-

tute an alteration.   If it was shown that damage would result from the act, no doubt the plaintiffs would have a remedy regardless of the fact that the building or premises were not or would not be altered.   If the thing proposed here constitutes an alteration in the building, then we do not see why attaching trade fixtures to the floors or walls, hanging pictures on the walls, placing lights at convenient places, and many other things which tenants customarily do and are expected to do, would not constitute alterations.   When all is said, the tenant was leasing the premises for use and not simply to look at from a respectful distance.

There is no other provision in the lease which affects the question before us.   If rule 12 has any application to anything other than the telegraph and telephone wires mentioned, then the clear implication is that the tenant has the right to install the wires, but under the direction of the plaintiffs. Such right is given the plaintiffs in the order appealed from. It seems so obvious that the second clause quoted from the lease in the statement of facts has no bearing on the question before us that we refrain from discussing it.

*By the Court.*—Order affirmed.


TIMLIN, J. (*dissenting*).   I do not think this case was correctly decided.   The facts of the case and the covenants relied upon to uphold the injunction are sufficiently set forth in the majority opinion.

The word "alteration" is one that can never acquire by judicial decision a fixed or definite meaning, because it connotes change from and is always relative to some former state or condition.   As such former state or condition is capable of unlimited variety so must the alteration be.   This word is subject to the usual interpretative influences of subject, context, associated words, and further liable to be affected in its meaning by the varying former conditions to which it relates. No doubt to create a legal liability the alterations should

bring about some material or substantial change in the former condition. The physical change may or may not be great. It is rather the degree of interference with the dominion of the owner which determines the materiality of the alteration. The defacement of a caryatid or a gargoyle, a change in the style of decorations, of esthetic value only, the closing up of a window which impairs the light and therefore usefulness, might either of them be a material alteration. We are not to determine the materiality of change from the diameter of the hole bored or that of the wire inserted, nor from the pecuniary harm done alone, for even alteration which is pecuniarily beneficial may be wrongful. In the instant case the building was wired for an electric service controlled by the lessors, and the covenant to make no alterations is found in an instrument with covenants that electric light apparatus shall be under the control and management of the lessors, and that if the lessee desires telegraphic or telephonic connections (i. e. the insertion of wires) the lessors reserve the right to direct the electrician as to where and how the wires shall be introduced, and without such directions no boring or cutting of wires will be permitted. The alteration here proposed consists in bringing into part of the building through holes bored for that purpose, without the direction and against the consent of the lessor, the wires of another electric light and power company over which the lessor has no control. This is introducing into part of the building an electric current of strength sufficient to be dangerous in case of defective insulation or accidental contact with other wires. Where these wires are placed the lessor cannot place his electric light wires. His domination is interfered with. He cannot direct and control the placing of telephone or telegraph wires as he could before, because he must avoid contact with these foreign wires. His insurance rates may or may not be affected. A meter must be installed and periodically read. The insulation and con-

tact of wires must be taken care of. This brings into the building other persons with other and it may be adverse interests. , The control of the lessor over these things which it is stipulated he shall control is materially affected by this alteration, hence I consider it a material alteration.

