HERBERT STERN ET AL. *v.* ZONING BOARD OF APPEALS OF THE CITY OF NORWICH ET AL.

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

242

Argued April 14—decided August 4, 1953

*Orrin Carashick*, for the appellant (defendant board).

*John P. Hodgson*, with whom were *Leon P. Lewis* and *Guerson D. Silverberg*, for the appellant (defendant Jones).

*P. Corbin Kohn*, for the appellees (plaintiffs).

CORNELL, J. This is an appeal from a judgment of the Court of Common Pleas sustaining the plaintiffs' appeal from the defendant zoning board of appeals of Norwich. By its decision the board had affirmed the action of the city manager in granting an application for the issuance of a certificate of occupancy approving a change of the nonconforming use of property owned by the defendant Jones, located at

the southwesterly corner of West Main Street and Jones Court.

The zoning ordinances, which became operative February 14, 1927, divided the town into four classifications with respect to the buildings and uses of property within each, namely, residence districts, class A; residence districts, class B; business districts; and unrestricted districts. Norwich Zoning Ordinances, Art. 1, § 1 (1927). At that time the principal use of the Jones property was, and it ever since has been, that of conducting a motor vehicle garage and repair shop thereon. It is located in a residence B zone, and under the provisions of the ordinances this use of the premises has always constituted a nonconforming use, which it was permissible to continue as such.

Section 6 (b) of article 2 of the ordinances provides: "Any use existing in any building or premises at the time of the passage of this ordinance and not conforming to the regulations of the use district or zone in which it is maintained may be changed to a similar use and such use may be extended throughout the building or premises. . . ." This provision is subject to certain conditions, § 6 (b) (1) and (2), but these do not materially affect the question for decision. In February, 1952, Jones, having decided that it was desirable to change the existing nonconforming use to that of a retail grocery supermarket, made application to the city manager for the issuance of a certificate of occupancy, which he granted as above recited. Whether he was warranted in so doing is the underlying question upon this appeal. The answer depends upon whether a retail grocery supermarket is a similar nonconforming use to that of a motor vehicle garage and repair shop within the meaning of § 6 (b) of the ordinances.

The provisions of § 6 (b) permit, and contemplate, a change from the nonconforming use existent when the ordinance took effect to another use, subject to the limitation that the latter shall be "similar" to the former. The criterion of similarity is not the type of business of the one as compared with the other, but the relative degree to which the use, or changed use, is obnoxious to the division or zone in which the original use is, and the changed use will be, or is planned to be, located. It is evident that the purpose of § 6 (b) in permitting a change from an original nonconforming use to another nonconforming use is twofold: (1) that the change be to a use which is no more obnoxious than the present use; and (2) that, when possible, it be to a use less obnoxious. *Lathrop* v. *Norwich*, 111 Conn. 616, 623, 151 A. 183. The policy of this as well as of most zoning ordinances is gradually to eliminate nonconforming uses. No change to a use which is more obnoxious than the existing one is allowed. See *Gunther* v. *Board of Zoning Appeals,* 136 Conn. 303, 309, 71 A.2d 91; *Farr* v. *Zoning Board of Appeals,* 139 Conn. 577, 587, 95 A.2d 792; Williams, Law of City Planning & Zoning, p. 203; Baker, Legal Aspects of Zoning, p. 66; Bassett, Zoning, p. 105. The intent of the provision may be recognized as one to invite an improvement in the character of a nonconforming use during the period of its continued existence, while awaiting the event of its abandonment or suppression.

The fact that the section makes no attempt at prescribing specific conditions constituting similarity in a changed use to the use from which it is changed is not a fatal objection to it because of the lack of certainty. Such indefiniteness is frequently encountered in zoning regulations and is particularly evident in provisions justifying a board of appeals

in varying or modifying the provisions of an ordinance or zoning regulation to relieve practical difficulties or unnecessary hardships in carrying out their strict letter. Boards of appeal are necessarily entrusted with the function of deciding, within prescribed limits and consistent with the exercise of legal discretion, whether the ordinance applies to a given situation, and the manner in which it does apply. Their purpose is to keep the ordinance on an even keel and to construe it so that its general purpose and intent may be accomplished. *Thayer* v. *Board of Appeals,* 114 Conn. 15, 23, 157 A. 273.

Article 4, § 17, of the ordinances provides in effect that no change shall be made in a nonconforming use unless a certificate of occupancy has been issued by the first selectman (now the city manager) on the owner's application, certifying that the change or alteration is in conformity with the provisions of the ordinances. The board of appeals is vested with power to "[h]ear and decide appeals where it is alleged there is error in any order, requirement or decision made by the First Selectman or the Second Selectman [now the city manager] . . . in the enforcement of this ordinance." Art. 4, § 14 (1); 19 Spec. Laws 1027, § 13. This authorized procedure, with an appeal from the action of the zoning board of appeals for judicial relief, furnishes adequate means to correct any decision made by the city manager that may require such alteration. The instant case called for a determination by the board of whether the proposed change in the existing nonconforming use was to a similar use, that is, to a use which was no more obnoxious than the existing one, and possibly less so. The facts of this case show that the matter was one peculiarly within the knowledge of the local board. A court should be

cautious about disturbing the decision of a local board where it appears than an honest judgment has been reasonably and fairly exercised. *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. Upon the record we cannot say that the board has acted arbitrarily or illegally or has abused its discretion. *Piccolo* v. *West Haven,* 120 Conn. 449, 455, 181 A. 615; *Lathrop* v. *Norwich,* 111 Conn. 616, 624, 151 A. 183.

The trial court was in error in sustaining the plaintiffs' appeal from the decision of the zoning board of appeals affirming the action of the city manager in granting a certificate of occupancy to the defendant Jones.

There is error, the judgment is set aside and the case is remanded with direction to render judgment dismissing the appeal.

In this opinion, BROWN, C. J., and BALDWIN, J., concurred.

O'SULLIVAN, J. (concurring). The majority hold, I take it, that the court was in error in reversing the decision of the zoning board of appeals of Norwich, because a grocery supermarket is a less obnoxious use in class B residence zone than a repair shop and garage. Since I find absolutely nothing in the local ordinance to justify such a position, I disagree with the reasoning of my colleagues, although concurring in the result they have reached.

Section 6 (b) permits a nonconforming use in any zone to be changed to a similar "use." The quoted word is to be read in the technical sense in which it appears in zoning ordinances, that is, the use which is a "residence use" or "business use" or "industrial use" or a like classification. So construed, the Norwich ordinance allows any business, such as the Jones

repair shop and garage, carried on as a nonconforming use in residence B zone to be changed under § 6 (b) to any other use permitted in a business zone, regardless of any question of obnoxiousness.

In this opinion INGLIS, J., concurred.