[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pursuant to General Statutes § 8-8, the plaintiffs in these consolidated appeals, Golden Arch Limited Partnership (Golden Arch) and Fairfield Professional Associates (Fairfield Professional), appeal a decision of the Town Plan and Zoning Commission of the Town of Fairfield (commission), conditionally approving Golden Arch's application for a certificate of zoning compliance.
Golden Arch filed an application for a certificate of zoning compliance with the commission in order to convert a former bank branch building, located at 1835 Black Rock Turnpike, into a McDonald's restaurant. Fairfield Professional CT Page 3357 petitioned the commission to hold a public hearing concerning Golden Arch's application. The commission held public hearings on Golden Arch's application and thereafter approved the application subject to seven conditions. Both Golden Arch and Fairfield Professional appeal the decision of the commission pursuant to General Statutes § 8-8. Both parties are aggrieved.[1] The appeals were consolidated by the court.
"In reviewing an appeal from an administrative agency, the trial court must determine whether `the agency has acted unreasonably, arbitrarily, illegally or in the abuse of its discretion. Board of Education v. State Employees RetirementCommission, 210 Conn. 531, 541, 556 A.2d 572 (1989); Frito-Lay,Inc. v. Planning and Zoning Commission, 206 Conn. 554,573, 538 A.2d 1039 (1988).'" Smith v. Zoning Board of Appeals,227 Conn. 71, 80, 629 A.2d 1089, cert. denied, ___ U.S. ___,114 S.Ct. 1190, 127 L.Ed.2d 540 (1993). "The burden of proof is on the plaintiff to demonstrate that the [commission] acted improperly." Spero v. Board of Appeals, 217 Conn. 435, 440,586 A.2d 590 (1991). "The reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . of course, where there is a failure to comply with the obligation to state reasons, the action is not deemed void but the court must search the record to see whether the board was justified in its decision." WestHartford Interfaith Coalition, Inc. v. Town Council,228 Conn. 498, 515, 636 A.2d 1342 (1994). Where an administrative agency gives the reasons for its denial of a site plan application, the denial must be upheld if even one of the stated reasons is sufficient to support it. Goldberg v. ZoningCommission, 173 Conn. 23, 26, 376 A.2d 385 (1977). "If any of the reasons supports the action of the commission, the plaintiff must fail in his appeal." Id.
 I Golden Arch's Appeal
In its appeal, Golden Arch claims that the commission acted illegally in imposing two conditions on its approval of the certificate of zoning compliance. Those conditions were stated by the commission as follows: "[1] Based on traffic engineering recommendations presented by opponents and the CT Page 3358 conflicting parking maneuvering required, the Black Rock Turnpike driveway shall be limited to exit only and restricted to and designed for right turns only. [2] The drive-through window shall be eliminated due to the one-way traffic flow around the site and the potential for conflict between cars maneuvering for parking and those exiting and proposed drive-through lane."
First, Golden Arch argues that since its proposed uses are permitted in the zone and complied with all specific requirements in the zoning regulations, its site plan could not be modified by the commission based on general standards in the regulations. Second, citing TLC Development, Inc. v.Planning Zoning Commission, 215 Conn. 527, 577 A.2d 288
(1990), Golden Arch argues that a site plan cannot be denied based on off site traffic considerations.
Before addressing the parties' respective claims, it is appropriate to review the regulatory framework giving rise to this appeal.
Section 12.2 of the zoning regulations provides in relevant part: "A Special Permit under Section 25.0 of the Zoning Regulations shall be required for any new construction, re-construction, exterior alterations, or addition for a use permitted in Section 12.3, 12.4, and 12.5. Change from one permitted use to another permitted use not involving new construction, re-construction, exterior alterations, or additions shall require an application to the Commission for aCertificate of Zoning Compliance under Section 2.22 of the Zoning Regulations subject to the standards of Section 25.7."
(Emphasis added.)
Section 2.22 of the zoning regulations provides: "Applications involving matters not to be disposed of by the Zoning Enforcement Officer under Section 2.21 of the Zoning regulations shall be submitted to him, but for reference to and action by the Commission, prior to any construction, reconstruction, extension, enlargement, moving or structural alteration of any building or other structure and prior to the use of any land, building or other structure." Section 2.21 is entitled "Disposition by the Zoning Enforcement Officer." Reading § 2.22 and § 12.2 together, it is clear that it is the commission that must act on an application for a change of use where, as here, there is no "new construction, re-construction, CT Page 3359 exterior alterations, or additions."
Under § 12.2, such an application is "subject to the standards of Section 25.7." Section 25.7, however, sets forth the "Requirements for Approval" for a special permit, even though § 12.2 characterizes the vehicle for approval of one permitted use from another permitted use as a "certificate of zoning compliance." Indeed, the only functional differences between a change from one permitted use to another involving new construction, re-construction, exterior alterations, or additions and a change which does not are (1) the name of the vehicle for approval, (2) the requirement for a special permit under § 25.0 requiring a site plan — a requirement impliedly required under § 25.7; see §§ 27.7.2, 27.7.7, 27.7.8; and (3) the requirement under § 25.0 (specifically § 25.4) for a public hearing.[2] The characterization of the vehicle for approval as a certificate of zoning compliance under standards for a special permit is peculiar. The issuance of a certificate of zoning compliance tends to be a ministerial function whereas "`Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process.' ConnecticutHealth Facilities, Inc. v. Zoning Board of Appeals,
[29 Conn. App. 1, 6, 613 A.2d 1358 (1992)]." Whisper Wind DevelopmentCorp. v. Planning Zoning Commission, 32 Conn. App. 515, 524,630 A.2d 108 (1993), affirmed, 229 Conn. 176, 640 A.2d 100
(1994).
In response to the court's inquiry during oral argument, Golden Arch characterized the nature of its application as one seeking site plan approval. The commission, on the other hand, characterized the petition as the functional equivalent of an application for a special permit. Given the many discretionary determinations required under § 25.7, Golden Arch's application under § 12.2 is not a petition for zoning compliance in the customary sense. However, reading the regulations as a whole, the relief sought under the particular provision of § 12.2 clearly is not a special permit. First, while labels are not necessarily controlling; In re Appeal ofBailey, 158 Conn. 439, 450-51, 262 A.2d 177 (1969); Caporalev. C.W. Blakeslee Sons, Inc., 149 Conn. 79, 86, 175 A.2d 561
(1961); Building Supply Corp. v. Lawrence Brunoli, Inc.,40 Conn. App. 89, 102 n. 16, 669 A.2d 620, cert. denied,236 Conn. 920, 674 A.2d 1326 (1996); it is significant that § 12.2 CT Page 3360 provides that a special permit is required for a change from one specially permitted use to another where new construction, re-construction, exterior alterations or addition is to be made; but prescribes an application for a certificate of zoning compliance where such work is not required. The disparate characterization of different vehicles for approval in adjacent sentences within the same section must presumably have been made by the legislative body with discrimination. Second, in the former instance a hearing is necessarily required. Zoning Regulations § 25.4; General Statutes § 8-3c.[3]
It is not required in the latter instance of an application for a certificate of zoning compliance.
In SSM Associates Limited Partnership v. Plan ZoningCommission of the Town of Fairfield, 15 Conn. App. 561,545 A.2d 602 (1988), affirmed, 211 Conn. 331, 559 A.2d 196 (1989), the Appellate Court held that whether an application is a "site plan" is not determined by the nature or nomenclature of the zoning regulations. Rather, the court held, "the term `site plan,' as used in § 8-3 (g),[4] is a general term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the regulations for that use. As such, it includes the entire package of documents submitted to a zoning `commission . . . to aid in determining the conformity of a proposed building, use or structure with specific provisions of such [zoning] regulations.' General Statutes §8-3 (g)." Id., 566.
Therefore, the plaintiff's application did not call for a special permit, as the commission maintains, but for site plan approval.
"`In ruling upon a site plan application, the planning commission acts in its ministerial capacity, rather than its quasi-judicial or legislative capacity. It is given no independent discretion beyond determining whether the plan complies with the applicable regulations. Kosinski v. Lawlor,
[177 Conn. 420, 426-27, 418 A.2d 66 (1979)]. The board is under a mandate to apply the requirements of the regulations as written. "If the plan submitted conforms to these regulations, the council has no discretion or choice but to approve it." RK Development Corporation v. Norwalk,156 Conn. 369, 375-76, 242 A.2d 781 (1968); Forest Construction Co. v.Planning Zoning Commission, 155 Conn. 669, 674-75, CT Page 3361236 A.2d 917 (1967).' Allied Plywood, Inc. v. Planning ZoningCommission, 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied,194 Conn. 808, 483 A.2d 612 (1984)." Roraback v. Planning Zoning Commission, 32 Conn. App. 409, 412, 628 A.2d 1350, cert. denied 227 Conn. 927, 632 A.2d 703 (1993); see Carr v.Bridgewater, 224 Conn. 44, 54-55, 616 A.2d 257 (1992).
Here, however, we are dealing not with the denial of a site plan application but with its modification. General Statutes § 8-3 (g) provides in relevant part: "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations." The Supreme Court has held that local zoning regulations may distinguish between those regulations on the basis of which a site plan may be denied and those on which a site plan may merely be modified; but that where such a distinction is made in the regulations, the commission is bound by it. TLC Development, Inc. v. Planning and ZoningCommission, supra, 215 Conn. 527. The regulations may also provide that the general objectives contained therein may serve as a basis for the modification of a site plan. Id.,
530-32; Friedman v. Planning Zoning Commission,222 Conn. 262, 608 A.2d 1178 (1992); cf. Barberino Realty DevelopmentCorp. v. Planning Zoning Commission, 222 Conn. 607,610 A.2d 1205 (1992).
Section 12.2 of the regulations, as discussed supra, provides that an application for a certificate of zoning compliance shall be subject to the standards of § 25.7. Section 25.7 incorporates the "applicable special standards for special exception uses in Section 27.0. . . ." The commission claims that the two conditions challenged by Golden Arch are authorized by § 27.4.3 which provides: "The proposed use, buildings and structures shall conform to the following standards: . . . the streets serving the proposed use shall be adequate to carry prospective traffic, provision shall be made for entering and leaving the property without creating unduehazard to traffic or congestion and adequate off-street parking and loading shall be provided on the same lot in accordance with Sect. 28.0 of the Zoning Regulations." (Emphasis added.)
This regulation clearly authorizes the first condition challenged by Golden Arch, that "the Black Rock Turnpike driveway shall be limited to exit only and restricted to and CT Page 3362 designed for right turns only."[5] Notably, Golden Arch challenges only the regulatory authority of the commission to impose this condition; it does not claim that the imposition of the condition is not supported by substantial evidence in the record.
The commission also claims that § 27.4.3 authorizes the elimination of the proposed drive-up window. That modification by the commission was stated as follows: "The drive-through window shall be eliminated due to the one-way traffic flow around the site and the potential for conflict between cars maneuvering for parking and those exiting and proposed drive-through lane." The commission again relies on the language in § 27.4.3 which states that "provision shall be made for entering and leaving the property without creating undue hazard to traffic or congestion. . . ."
Although "[i]n construing regulations, the general rules of statutory construction apply"; Smith v. Zoning Board ofAppeals, 227 Conn. 71, 89, 629 A.2d 1089, cert. denied,___ U.S. ___, 114 S.Ct 1190, 127 L.Ed.2d 540 (1993); this court is prohibited from addressing the construction of § 27.4.3 de novo. Were the court addressing the issue de novo, it would rely, in its construction of § 27.4.3, on the fact that a reference to "traffic or congestion" in zoning jurisprudence, except where expressly provided otherwise, generally refers to traffic or congestion off site, or at the conjunction of the site and a public street, not on the site itself. While it would unduly lengthen this opinion to catalogue all of the cases which reflect this reality, see generally ProtectHamden/North Haven from Excessive Traffic and Pollution, Inc.v. Planning Zoning Commission, 220 Conn. 527, 600 A.2d 757
(1991); Stiles v. Town Council, 159 Conn. 212, 268 A.2d 395
(1970); Vece v. Zoning Planning Commission, 148 Conn. 500,172 A.2d 619 (1961); First National Bank Trust Co. v. ZoningBoard of Appeals, 126 Conn. 228, 239, 10 A.2d 691 (1940). I would also find persuasive that drive-through restaurants are expressly permitted in this zone. Zoning Regs. § 12.4.16.
However, the court is prohibited from addressing this issue de novo. "Generally, it is the function of a zoning board or commission to decide `within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. CT Page 3363 The trial court ha[s] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. Pascale v. Board ofZoning Appeals, 150 Conn. 113, 116, 117, 186 A.2d 377 [1962];Stern v. Board of Zoning Appeals, 140 Conn. 241, 244,99 A.2d 130 [1953]. In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. ConnecticutSand Stone Corporation v. Zoning Board of Appeals,150 Conn. 439, 442, 190 A.2d 594 [1963].' Toffolon v. Zoning Board ofAppeals, 155 Conn. 558, 560-61, 236 A.2d 96 (1967); see alsoThorne v. Zoning Board of Appeals, 156 Conn. 619, 620,238 A.2d 400 (1968)." Schwartz v. Planning Zoning Commission,
supra, 208 Conn. 152. Nonetheless, "[i]n light of the existence of a statutory right of appeal from the decisions of local zoning authorities, . . . `a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . .'" Daughter of St. Paulv. Zoning Board of Appeals, supra, 17 Conn. App. 57, quotingSuffield Heights Corporation v. Town Planning Commission,144 Conn. 425, 428, 133 A.2d 612 (1957). Fidelity to these rules of law requires that judges, however grudgingly, often accept the construction placed on local land use regulations which they themselves would eschew.
Applying the governing standard of review, this court cannot hold that the commission abused its discretion in impliedly holding that the regulation authorized it to modify the site plan to avoid "undue hazard to traffic or congestion" on the site itself and to thereby eliminate the drive-through feature. That a drive-through restaurant is a permitted use in this district does not preclude such a modification. When a zoning authority establishes that a particular use within a zone is permitted a presumption arises that the permitted use would comply with the criteria contained in the site plan regulations; an examination into special conditions of a given site is permissible when the applicable zoning regulations permit it. Barberino Realty Development Corp. v. Planning Zoning Commission, supra, 222 Conn. 616; Friedman v. Planning Zoning Commission, supra, 222 Conn. 266.
As with the first modification, Golden Arch challenges only the regulatory authority of the commission to impose the CT Page 3364 modification eliminating the drive-through; it does not claim that the modification is not supported by substantial evidence in the record. The court holds that the commission did not abuse its discretion in basing its modifications of Golden Arch's site plan on § 27.4.3.
 II Fairfield Professional's Appeal
In its appeal, Fairfield Professional claims that Golden Arch's application should have been denied, rather than conditionally approved. Fairfield Professional advances five arguments in support of its appeal. First, Fairfield Professional argues that the commission erroneously accepted Golden Arch's application for a certificate of zoning compliance because Golden Arch's application called for alterations. Second, Fairfield Professional argues that Golden Arch's application should have been denied because the lighting and sign plans submitted by Golden Arch were deficient. Third, Fairfield Professional argues that Golden Arch's application should have been denied because the automobile lanes indicated on Golden Arch's plans are narrower than permitted under the regulations. Fourth, Fairfield Professional claims that the commission erred in approving Golden Arch's application in the absence of adequate evidence confirming the lack of detrimental effects on neighborhood property values. Finally, Fairfield Professional argues that the commission erred in approving Golden Arch's application where substantial evidence of traffic congestion resulting from the proposed use existed.
 A.
Section 12.2 of the Zoning Regulations of the Town of Fairfield, as discussed earlier, provides: "In addition to the foregoing pre-existing permitted uses, the use of land, buildings and other structures shall be solely for the purposes set forth in Section 12.3 for Center Designed Business District, Section 12.4 for Designed Commercial District and Section 12.5 for Neighborhood Designed Business District. A Special Permit under Section 25.0 of the ZoningRegulations shall be required for any new construction,re-construction, exterior alterations, or addition for a use permitted in Section 12.3, 12.4, and 12.5. Change from oneCT Page 3365permitted use to another permitted use not involving newconstruction, re-construction, exterior alterations, oradditions shall require an application to the Commission for aCertificate of Zoning Compliance under Section 2.22 of the Zoning Regulations subject to the standards of Section 25.7." (Emphasis added.)
Fairfield Professional argues that the commission erred in accepting and approving Golden Arch's application because that application called for alterations. Fairfield Professional cites the remarks of Bruce Graham, Golden Arch's architect, at the initial public hearing in which he stated: "I briefly mentioned previously, we are making minimal changes to the exterior of the building. Really the only exterior change was removing the canopy over the twolane [sic] drive-through for the previous bank and replacing it with two smaller roofs over the drive-up windows." Fairfield Professional argues that "[t]he language is clear and unambiguous. The regulation does not state, as it could, that an application for Zoning Compliance is appropriate for a change from one permitted use to another not involving majoror significant exterior alterations or additions, thereby permitting the issuance of such a certificate of zoning compliance if only minor exterior alterations are proposed." (Emphasis added.)
"Generally, it is the function of a zoning board or commission to decide `within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court ha[s] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. Pascale v. Board ofZoning Appeals, 150 Conn. 113, 116, 117, 186 A.2d 377 [1962];Stern v. Board of Zoning Appeals, 140 Conn. 241, 244,99 A.2d 130 [1953]. In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. ConnecticutSand Stone Corporation v. Zoning Board of Appeals,150 Conn. 439, 442, 190 A.2d 594 [1963].'" Schwartz v. Planning ZoningCommission, 208 Conn. 146, 152, 543 A.2d 1339 (1988).
"If, in granting the [certificate of zoning compliance], CT Page 3366 the commission construed § [12.2] beyond the fair import of its language, then the commission acted in an arbitrary and illegal manner. Spero v. Zoning Board of Appeals,217 Conn. 435, 441, 586 A.2d 590 (1991); Capalbo v. Planning ZoningBoard of Appeals, 208 Conn. 480, 490-91, 547 A.2d 528 (1988). The rules of statutory construction apply to the interpretation of local regulations. See Schwartz v. Planning Zoning Commission, supra, 153. We look first to the language of the regulation to determine the intent of the enacting body. Spero v. Zoning Board of Appeals, supra. If the language of the regulation is ambiguous, the court can look to its purpose as an aid in construing it. Nickel Mine BrookAssociates v. Joseph E. Sakal, P.C., 217 Conn. 361, 364,585 A.2d 1210 (1991); Zichichi v. Middlesex Memorial Hospital,204 Conn. 399, 405, 528 A.2d 805 (1987)." Double I LTD.Partnership v. Plan Zoning Commission, 218 Conn. 65, 72-73,588 A.2d 624 (1991).
"When ambiguous language is used in a zoning ordinance, its meaning and scope may be found by examining the language in the light of other provisions in the ordinance, by ascertaining the object sought to be accomplished, and by considering all of the relevant circumstances." Pascale v.Zoning Board of Appeals, 150 Conn. 113, 117, 186 A.2d 377,94 A.L.R.2d 414 (1962). "When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." Planning Zoning Commissionv. Gilbert, 208 Conn. 696, 706, 546 A.2d 823 (1988). "Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." Spero v. Zoning Board of Appeals,
supra, 217 Conn. 441. Moreover, the regulations themselves provide: "The words used in these regulations shall have the meaning commonly attributed to them. Doubts as to their precise meaning shall be determined by the Town Plan and Zoning Commission in accordance with the purpose and intent of these regulations." Zoning Regs. § 31.1.
The word "alteration" is ambiguous. "The term `exterior alteration . . .' is not defined in the [regulations]. . . . `Alteration' is `the act or action of altering'. Webster's Third New International Dictionary 63 (1981). `Alter' means `to cause to become different in some particular characteristic . . . without changing into something else'. CT Page 3367 Webster's Third New International Dictionary 63 (1981)."Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801,828 P.2d 549, 555 (1992); see also 3 Words Phrases, "Alter; alteration", p. 396 et seq. Contrary to what Fairfield Professional contends, cases arising in various contexts in other jurisdictions hold that it is not just any change that will constitute an alteration.[6] See, e.g., Hale v. Basin MotorCo., 110 N.M. 314, 795 P.2d 1006, 1010 (1990); Garland v.Titan West Associates, 147 App.Div.2d 304, 543 N.Y.S.2d 56, 60
(1989); Harless v. Geyer, 849 P.2d 904, 905 (Colo.App. 1992) (covering stairs with linoleum was not an "addition" or "alteration" as used in provision making building code applicable to alteration of or addition to existing building);City of Le Mars v. Fisch, 251 Iowa 149, 100 N.W.2d 14, 16
(1959) (installation of carpeting and moving of heat ducts did not constitute "alteration" for purposes of municipal code making it unlawful to alter without first obtaining permit);Berry v. City of Atlanta, 75 Ga. App. 278, 43 S.E.2d 191,195-96 (1947) (re-roofing of house constituted "repairs" and not "alterations" within meaning of penal ordinance, strictly construed, requiring permit for alterations but not for repairs); Drew v. Mason, 81 Ill. 498, 499, 25 Am. Rep. 288
(1876) (putting a lightening rod on a house is not an altering); Grady v. National Conduit Cable Co., 153 App.Div. 401,138 N.Y.S. 549, 553-54 (1912) (installation of sprinkling device is not, as a matter of law, an alteration of a building); Emmons v. D.A. Schulte, Inc., 13 Del. Ch. 336,120 A. 221, 222 (1923) (advertising signs on outer walls of building not an alteration to the building); cf. Mahoney v.The Hartford Investment Corp., 82 Conn. 280, 287, 73 A. 766
(1909) (labor and materials necessary to put in a new sewerage system in a remodeled building were not alterations within a provision of a contract declaring that no alterations should be made in the work done or described by the drawings and specifications except on the written order of the architects).
As applied to buildings, the word "alteration" connotes a substantial change. Garland v. Titan West Associates, supra, 543 N.Y.S.2d 60; Ten-Six Olive, Inc. v. Curby, 208 F.2d 117,122 (8th Cir. 1953) (as distinguished from a repair in the context of a lease requiring that the premises be returned in good condition); Cawker v. Trimmel, 155 Wis. 108,143 N.W. 1046, 1046-47 (1913) (lease). The defendant Fairfield Professional is correct in its argument that the commission could have inserted the word substantial if that would have CT Page 3368 evidenced its intent. However, unless the proposed alterations to the building are substantial ones, the slightest proposed change could render the provision obviating the need for a special permit a dead letter. "`Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body.'Spero v. Zoning Board of Appeals, 217 Conn. 435, 441,586 A.2d 590 (1991)." Lauer v. Zoning Commission, 220 Conn. 455, 464,600 A.2d 310 (1991). So, too, we also must presume that the local legislative body, in enacting the regulation in question, "did not intend to enact meaningless provisions."Zoning Commission v. Fairfield Resources Management,41 Conn. App. 89, 115, 674 A.2d 1335 (1996). "`The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. Commissioner of Internal Revenue v.Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75
(1965); Citerella v. United Illuminating Co., 158 Conn. 600,609, 266 A.2d 382 (1969); see State v. Campbell,180 Conn. 557, 563, 429 A.2d 960 (1980). . . .'" Red Hill Coalition,Inc. v. Town Plan Zoning Commission, 212 Conn. 727, 737,563 A.2d 1347 (1989). "We observe, finally, that `[t]his court traditionally eschews construction of statutory language which leads to absurd consequences and bizarre results.' State v.Rodgers, 198 Conn. 53, 61, 502 A.2d 360 (1985), and cases cited therein." Caltabiano v. Planning Zoning Commission,211 Conn. 662, 667, 560 A.2d 975 (1989).
We turn to the question of whether the commission could have found that the proposed change in the canopy is not an "alteration" within the ambit of the regulation.
The applicant's architect stated at the public hearing that "the only exterior change was removing the canopy over the two lane [sic] drive-through for the previous bank and replacing it with two smaller roofs over the drive-up windows." The precise nature of the item being removed is unclear. All we know is that one canopy is being replaced by two smaller roofs. A "[c]anopy is variously described and innumerable structures and devices are called by that name. A common definition describes it as a covering usually for protection or shelter. A frequent use is as a covering cloth suspended from the four high posts of a bed. It is ascribed to the covering carried on poles over an exalted personage or CT Page 3369 sacred object. A canopy can be both temporary and permanentcover providing shelter and decoration, as over a door orwindow. An awning or marquee often stretching from doorway to curb, or covering a section of a grandstand, is called a canopy. . . ." (Emphasis added.) Segaloff v. City of NewportNews, 209 Va. 259, 163 S.E.2d 135, 139 (1968).
That the improvement is to be made by the new owner rather than the prior owner of the existing building and canopy, of course, is irrelevant. "Zoning regulates the use of land and is not concerned with present ownership or limited to actual use, but includes the potential future use of property. See Builders Service Corporation v. Planning ZoningCommission, 208 Conn. 267, 274, 545 A.2d 530 (1988)." Griffinv. Planning Zoning Commission, 30 Conn. App. 643, 649,621 A.2d 1359 (1993); see Armstrong v. Zoning Board of Appeals,158 Conn. 158, 167, 257 A.2d 799 (1969); Del Buono v. Board ofZoning Appeals, 143 Conn. 673, 679, 124 A.2d 915 (1956). Thus the applicant here is entitled to stand in the shoes of the prior owner when it seeks to avail itself of § 12.2 of the zoning regulations. Moreover, its motive in seeking to change the use from one permitted use to another is irrelevant. "That motivation . . . should not limit the scope of the zoning commission's consideration of the application and of its ultimate decision thereon more narrowly than is appropriate. . . . See Caserta v. Zoning Board of Appeals, 219 Conn. 352,361-62, 593 A.2d 118 (1991) (motive of applicant irrelevant to jurisdiction of administrative agency)." Protect Hamden/NorthHaven from Excessive Traffic and Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 547.
Against the backdrop of these principles, it cannot be said that the commission abused its discretion in finding that the replacing of "two smaller roofs" for the existing canopy was not so substantial as to constitute "new construction, re-construction, exterior alterations, or [an] addition." The commission could find that the new roofs would serve the same general purpose as the existing canopy over a customer service window. Compare Segaloff v. City of Newport News, supra,163 S.E.2d 139. The commission could find that what was proposed was so small and inconsequential as not to require a special permit pursuant to § 12.2 of the zoning regulations. Cf.Cawker v. Trimmel, supra, 143 N.W. 1046-47; Berry v. City ofAtlanta, supra, 43 S.E.2d 195-96. CT Page 3370
 B.
Fairfield Professional further argues that the commission's conditional approval of Golden Arch's application was illegal because the application failed to meet the requirements of §§ 25.7.2 and 29 regarding signs and outdoor illumination. The commission responds that Golden Arch's lighting and sign plans conformed to the requirements of §§ 25.7.2. and 29.
Section 12.2 provides in pertinent part that "[c]hange from one permitted use to another permitted use not involving new construction, re-construction, exterior alterations, or additions shall require an application to the commission for a certificate of zoning compliance under Section 2.22 of the Zoning Regulations subject to the standards of Section 25.7." Section 25.7.2 of the regulations provides in pertinent part that "the Site Plan shall include the location and arrangement of . . . signs and outdoor illumination . . . ." Section 29.1 provides, in pertinent part, that "no sign shall be established, constructed, reconstructed, enlarged, extended, moved or structurally altered, (1) other than in accordance with these Sign Regulations and (2) unless a Certificate of Zoning Compliance has been obtained under Section 2 of the Zoning Regulations."
Golden Arch submitted a lighting plan indicating the location and arrangement of the proposed outdoor illumination. Golden Arch also submitted plans showing the location and arrangement of the proposed outdoor illumination and signs. Plan C-1 shows the location of both the proposed outdoor lights and the proposed signs. Plan C-1 also contains a sign schedule indicating the type of sign to be displayed at the indicated location. Plans CE-4 and CE-5 provide further indication as to the location and arrangement of the proposed signs.
Fairfield also argues that the plans submitted by Golden Arch lacked "a detailed drawing of the proposed lighting fixture . . . [and lacked] the appropriate detail to enable the commission to properly evaluate the signage package proposed." The regulations do not, however, require a detailed drawing of the lighting fixture. However, Golden Arch submitted such a drawing. Although the drawings indicating that exact dimensions of the proposed signs are dated after CT Page 3371 the approval of Golden Arch's application, Golden Arch did represent that all of the proposed signs would conform to the applicable regulations. Furthermore, the approval of Golden Arch's application was expressly conditioned upon the signs conforming with the regulations. The conditions of approval also required that "[t]he `Golden Arches' must be removed from the directory signs in accordance with section 29.7 of the Regulations." Section 29.7 of the regulations permits any sign "[i]ntended as a directional or warning sign with no advertising thereon." The conditions of approval also stated that "[t]he `Golden Arch' on the pole sign is limited to three feet in height in accordance with 29.12 of the Regulations." Section 29.12 provides, in pertinent part, that "[n]o letter, figure or device shall exceed a height of three (3) feet for a single line of copy . . . ." The imposition of these conditions indicate that the commission reviewed Golden Arch's application with respect to the requirements of § 29 and conditioned its approval upon Golden Arch's compliance with the requirements of that section. In light of the record, it cannot be said that the commission acted arbitrarily, illegally, or in abuse of its discretion in conditionally approving Golden Arch's application.
 C.
Section 12.2 of the regulations provides that an application for a certificate of zoning compliance is subject to the standards of § 25.7. Section 25.7.4 provides in pertinent part that "[t]he specifications for all driveways, off-street parking and loading spaces . . . shall be subject to the approval of the Commission. . . ." Section 28.11.2.4 of the regulations provides that a "[one] way aisle with no parking shall be no less than twelve (12) feet in width."
Golden Arch's application proposed side by side one way lanes to the rear of the building. The lane nearer the building was to serve as the drive-through lane; the lane further from the building was to serve non drive-through traffic.
Fairfield Professional argues that this two lane accessway to the rear of the building is not as wide as required under § 28.11.2.4 of the regulations. Fairfield Professional argues that because § 28.11.2.4 requires that each lane be twelve feet in width, the two lane accessway must CT Page 3372 have a combined width of 24 feet. Fairfield Professional argues that the plans submitted by Golden Arch indicate that the combined width of the two lane accessway is only 22 feet. Fairfield Professional argues that these lanes are too narrow and the application should have been denied.
The commission responds that although Golden Arch sought approval of a two lane accessway around the building, with a combined width of twenty-two feet, the commission approved a single accessway around the building with a width of twenty-two feet. The commission argues that this twenty-two foot wide one way lane easily satisfies § 28.11.2.4.
The two lane accessway proposed by Golden Arch was necessitated by the proposed drive-through service, which required a separate drive-through lane. The commission cited the narrowness of the property as a reason for denying the proposed drive-through service. When the commission denied approval of the drive-through window, the two lane accessway was no longer necessary. The commission acted legally and did not violated § 28.11.2.4 of the regulations.
 D.
As observed supra, § 12.2 requires that an application for a certificate for zoning compliance comply with the standards of § 25.7. Section 25.7.7 provides in pertinent part that "the development shown on the site and architectural Plans shall be of such a character as . . . to harmonize with the neighborhood . . . [and] to protect property values in the neighborhood. . . ."
Fairfield Professional argues that the record is devoid of any evidence sufficient to satisfy § 25.7.7. In its memorandum of law, Fairfield Professional states that "[n]o testimony or report from a qualified real estate appraiser was presented at the public hearing or submitted in writing to be made part of the record." The commission responds that there is sufficient evidence in the record to satisfy the requirements of § 25.7.7.
First "`[t]he designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on . . . property values, or CT Page 3373 the general harmony of the district.' Beit Havurah v. ZoningBoard of Appeals, 177 Conn. 440, 443, 418 A.2d 82 (1979)."TLC Development, Inc. v. Planning Zoning Commission,215 Conn. 527, 532-33, 577 A.2d 288 (1990). Second, lay members of a zoning commission may rely on their personal knowledge concerning matters readily within their competence. Feinson v.Conservation Commission, 180 Conn. 421, 427, 429 A.2d 910
(1980), and cases cited therein. Third, the record indicates that the use of the subject premises as a McDonald's Restaurant is a permitted use. Zoning Regs. § 12.4.15. The record also indicates that a McDonald's is in harmony with the neighborhood. Specifically, the record indicates that many fast-food restaurants are located on Black Rock Turnpike, including, Dunkin Donuts, 1910 Black Rock Turnpike; Carvel, 1838 Black Rock Turnpike; Duchess, 2315 Black Rock Turnpike; and, Kentucky Fried Chicken, 1755 Black Rock Turnpike. Furthermore, no less than five residents testified on behalf of the proposed McDonald's. The regulations do not require that the applicant submit testimony or a report from a real estate appraiser to satisfy § 25.7.7. The record contains sufficient evidence indicating that the proposed use is in harmony with the neighborhood character and that the proposed use would protect property values in the neighborhood. It cannot be said that the commission acted illegally, arbitrarily, or in abuse of its discretion.
 E.
Section 25.7.7 of the regulations also requires in pertinent part that "the development shown on the site and Architectural Plans shall be of such a character as . . . to avoid undue traffic congestion." Fairfield Professional argues that the commission erred in approving Golden Arch's application because there was substantial evidence in the record indicating that the proposed McDonald's would result in increased traffic congestion.
Fairfield Professional supports its argument by citing to the statement of Golden Arch's attorney at the public hearing that "[t]his property sits in and on as busy a commercial business thoroughfare as exists in the State of Connecticut." Fairfield Professional also cites the public hearing testimony of Golden Arch's traffic engineer, "[w]ithout question, Black Rock Turnpike is a busy street. It is a commercial roadway and it carries high volume traffic as people have indicated." CT Page 3374 Fairfield Professional also relies on the traffic report prepared by DLS Consulting. DLS Consulting was retained by various businesses located along Black Rock Turnpike who oppose Golden Arch's application. The traffic report prepared by DLS Consulting concluded that "[i]t is our opinion that the introduction of the McDonald's site, as proposed, would result in a significant increase in area traffic and turning movements."
First, the term "traffic congestion" in the context of zoning, and local zoning regulations, is a term of art derived from General Statutes § 8-2. "General Statutes § 8-2 provides, in part, that zoning regulations `shall be designed to lessen congestion In the streets.' Jarvis Acres, Inc. v. ZoningCommission, 163 Conn. 41, 49, 301 A.2d 244. It is not the overall volume of daily or hourly traffic which is referred to in the statute but `congestion in the streets,' that is, density of traffic. Wilson v. Planning Zoning Commission,162 Conn. 19, 23, 291 A.2d 230; Pecora v. Zoning Commission,145 Conn. 435, 440, 144 A.2d 48." Lathrop v. Planning ZoningCommission, 164 Conn. 215, 222, 319 A.2d 376 (1973); seeStiles v. Town Council, 159 Conn. 212, 268 A.2d 395 (1970). Second, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Internal quotation marks omitted.) Manatuck Associates v. Conservation Commission,28 Conn. App. 780, 785, 614 A.2d 449 (1992). Third, "`[t]he designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic. . . .' Beit Havurah v. ZoningBoard of Appeals, 177 Conn. 440, 443, 418 A.2d 82 (1979)."TLC Development, Inc, v. Planning Zoning Commission, supra,215 Conn. 532-33. Fourth, the members of the commission were entitled to rely on their personal knowledge concerning such matters as traffic and street safety. Feinson v. ConservationCommission, supra, 180 Conn. 427; Dram Associates v. Planning Zoning Commission, 21 Conn. App. 538, 542, 574 A.2d 1317, cert. denied, 215 Conn. 817 (1990); Central Bank for Savingsv. Planning Zoning Commission, 13 Conn. App. 448,537 A.2d 510 (1988).
A traffic impact analysis prepared by Gary Dean of Atlantic Traffic Design Engineers, Inc., stated that "[t]he CT Page 3375 overall total effect of the new McDonald's not considering the traffic generated by the former use will be minimal with an average of about two new vehicles attracted to the area —specifically oriented to McDonald's — every three minutes during the busiest lunch-time peak hours. Such an impact is truly immeasurable and insignificant to overall traffic conditions in the vicinity." This traffic impact analysis compared the traffic generated by the former and proposed uses. The traffic impact analysis prepared by Atlantic Design Traffic Engineers, Inc. concluded that "this analysis has shown that there is sufficient capacity along the adjacent roadway to accommodate the nominal volume of traffic which would be generated by the proposed McDonald's Restaurant . . . ."
Gary Dean testified that from an "overall planning and traffic standpoint certainly the McDonald's use is compatible with traditional retail uses, in particular the bank that was on site, certainly would be comparable with convenient [sic] stores, dry cleaners or things of that nature, or a small strip retail center, so certainly it is consistent with others in the zone and again for comparison purposes, particularly during the busiest time when McDonald's will be busiest, for all intents and purposes is equivalent of a bank on site."
This is not a record on which the commission was bound to find that the addition of a McDonald's at this location of the Boston Post Road in Fairfield would create "congestion in the streets", especially given the conditions which accompanied the commission's approval. The commission did not act illegally, arbitrarily or in abuse of its discretion by conditionally approving Golden Arch's application.
The appeals of both Fairfield Professional and Golden Arch are dismissed.
BY THE COURT
Bruce L. Levin Judge of the Superior Court